STATE of Iowa, Appellant,

v.

James David LaDOUCEUR, Appellee.

No. 83–823.

Supreme Court of Iowa.

April 17, 1985.

G. Wylie Pillers III, County Attorney, and Craig Ament, Asst. County Atty., for appellant.

Charles L. Harrington, Appellate Defender, and Deborah A. Goins, Asst. Appellate Defender, for appellee.

Considered by UHLENHOPP, P.J., and McCORMICK, SCHULTZ, CARTER, and WOLLE, JJ.

UHLENHOPP, Justice.

The single issue before us in our further review of a decision by the court of appeals is whether the trial court abused its discretion in granting defendant James David LaDouceur a new trial following his conviction by a jury of third-degree sexual abuse. The court of appeals by an equally divided vote upheld the trial court's order.

I. On May 28, 1982, Veronica Sue Doyle was babysitting for defendant and his wife, Brenda LaDouceur. Brenda arrived at home first, and told Veronica she could leave. Veronica arranged a ride with a friend, Pam Rannfeldt. As those two were driving out of the driveway, defendant arrived and convinced the girls to go to a party at a friend's house. The girls first went into the LaDouceur house, and then the three of them went to the party. At the party they had "quite a bit to drink."

Veronica eventually asked Pam to take her home, but defendant decided that he should see her home. On the way he stopped by Oxbow Lake, claiming that he needed to check his fishing lines. He got Veronica out of the car, placed her on the ground, and sexually abused her. He then drove off leaving her afoot.

As Veronica walked along the road, an acquaintance saw her and noted her disheveled appearance and emotional upset. When Veronica arrived home, she told her mother what had happened; her mother testified that Veronica was hysterical. The two called the police who, after going to the Oxbow area, took Veronica to Dr. Richard Nelson for a physical examination.

Deputy John Whitsell investigated at the scene and made notes of his investigation.

The next morning Deputy Larry Greenwalt interrogated defendant on tape. Defendant admitted sexual intercourse with Veronica but claimed it was consensual. According to Greenwalt, defendant then asked him to turn off the tape, which he did, and defendant stated he forcibly raped the girl; Greenwalt thereupon went into the hallway and had Deputy Whitsell come

into the interrogation room; and defendant repeated the confession. Whitsell later testified he made supplemental notes regarding this occurrence.

Whitsell was on vacation just before the trial. Shortly after his return his deposition was taken, including the following:

Q. Tell me your involvement [in the interrogation]. A. Sergeant Greenwalt asked me to step into his office. He advised me he wanted another officer to hear Mr. LaDouceur's confession to the crime.

Q. And what did you hear? A. Larry said to him, "You did forcibly rape the girl", and Mr. LaDouceur said, "yes, I did".

Q. Were those the exact words that Greenwalt used? A. I can't be sure on the exact words at all.

Q. He may not have used the word rape? A. I'm not sure. It's been almost a year.

Q. What are you exactly sure of? A. What I'm sure is Mr. LaDouceur did confess to having sexual contact with the girl that evening or early morning.

Q. He admitted that he had sexual contact? A. Yes.

Q. And that's what you're sure of? A. That's what I'm sure of until I look at the reports.

Q. Okay. Did you make up your own reports or did Greenwalt—when you're talking about reports, are you talking about you or Greenwalt? A. Yes, I made up a report.

Q. What she told you and your investigations out at the Oxbow area? A. Yes, it was, and when my reports were all completed, when Sergeant Greenwalt asked me to come in there and I made an amendment and I apparently didn't get that.

Q. When was the amendment made? Recently or in May? A. No, the same date, before I went home.

Q. What did that amendment cover? A. Just what happened, or what took place in that office. That's all I can remember of it at this time.

Q. But your basic testimony this week is he admitted to have sexual intercourse with the girl? A. Yes.

Mr. Pfeffer: I have no more questions.

Mr. Ament: The only one I want to ask, did he admit to having forcible sexual intercourse?

The Witness: I believe so, but I'm not sure right now.

Mr. Ament: You're not saying though that by time of trial you won't be able to check based on your reports?

The Witness: No, I'm not saying that at all.

Mr. Ament: Okay.

Mr. Pfeffer: I don't know if I understood your last question.

Mr. Ament: I asked him that he's not trying to imply to you that by trial he won't be able to say he told me he raped her, he told me he had forcible intercourse. He's just saying he doesn't remember and you just got back from vacation.

The Witness: I've known about this for about thirty minutes.

Mr. Ament: Okay.

Whitsell was unable to find his supplemental notes. He so informed an assistant county attorney but stated he had refreshed his memory by other officers' notes and discussions. The assistant county attorney did not report these facts to defense counsel.

At trial, Greenwalt testified forcefully for the State, but the State did not call Whitsell as a witness. The jury found defendant guilty of third-degree sexual abuse.

Defendant moved for a new trial. Paragraph 6 of the motion stated:

That the State failed to inform defense that Deputy Whitsell could not recall the statement for the reason Whitsell could not locate his notes and said testimony would have allowed Defendant to call Whitsell on the key issue of the statement after defense was told further recall would be obtained and counsel would be advised as shown in the deposition.

Paragraph 20 of the motion stated that defendant was denied a fair trial.

Prior to hearing on the motion, Whitsell prepared and executed the following statement:

I, *John F. Whitsell,* of the Clinton County Sheriff's Department, was at the Clinton Law Center on 05–28–83 at approximately 10:30 a.m. While at the Law Center I was asked by Sgt. Larry Greenwalt to step into the zerox room adjacent to his office. While in that room Sgt. Greenwalt asked me to book the defendant into the jail and that he had to go to the County Attorney's office and didn't have time. I did so and went back downstairs. Approximately one hour later Sgt. Greenwalt again asked to talk with me. This time Larry advised me that James LaDouceur had confessed and he wanted me to witness the confession due to the fact LaDouceur would not confess with the tape machine on. I went into Sgt. Greenwalt's office and observed LaDouceur sitting directly to my right as I entered the door. Sgt. Greenwalt asked LaDouceur if in fact he had intercourse with Veronica Doyle. LaDouceur stated, "Yes, I did." Sgt. Greenwalt then asked LaDouceur if he had forced her. La-Douceur replied, "Yes, it was forced. I raped her." At this point an attorney came and got his client advising him not to talk.

I remembered this information after reviewing with Sgt. Greenwalt and his notes. My notes were lost in the paperwork. After reviewing the setting I could recall the incident well. This Affidavit was prepared without the help or assistance of any County Attorney or other law enforcement personnel.

At the hearing on the motion, Whitsell testified along similar lines, although his testimony shows some confusion and contradiction.

The trial court thoroughly reviewed the facts, the testimony, and the law; held that in fairness the prosecutor should have revealed Whitsell's inability to find his supplemental notes; and concluded that de-fendant was denied a fair trial. The court's final remarks, which are well within the record, were these:

Counsel for defendant requested of the County Attorney that defense be allowed to take the deposition of Deputy Sheriff John Whitsell. That deposition was taken on the day before trial. At that time Mr. Whitsell was included in the minutes of evidence as a witness and a subpoena had issued to him at the request of the State. The nature of the testimony given by Mr. Whitsell is set out commencing at page 11 of this opinion. I conclude from the deposition that the Assistant County Attorney in effect advised defense that Mr. Whitsell would refresh his memory from notes he had taken at the time of the alleged confession and that his testimony might well be more specific or different at trial. Mr. Whitsell at the time of the deposition knew that he was not able to find the notes which he made at the time of the alleged confession. Mr. G. Wylie Pillers III, the County Attorney, did not know of the missing notes prior to trial. Mr. Craig Ament, Assistant County Attorney, did know that the notes were missing, and he knew it prior to the commencement of trial. He knew the notes were missing when he made a decision to refrain from calling Mr. Whitsell as a witness. Defense counsel did not learn that the notes were missing until after the trial.

In effect by asking for the deposition of Mr. Whitsell the defense had asked for information concerning the circumstances and nature of the alleged confession of the defendant. At the deposition he in effect was told that Mr. Whitsell would be refreshing his memory from his notes. Rules of Criminal Procedure 12–1 and 13–2–a(1) and 13–5 and Rule of Civil Procedure 125 are set out at pages 10 and 11 of this opinion. By virtue of those rules the State had a duty to inform defense counsel that Mr. Whitsell did not in fact have notes relating to the alleged confession. The prosecutor did not perform that duty. The reasons for not calling Mr. Whitsell and inferentially

for not telling defense counsel of the missing notes have been variously and not consistantly stated by the prosecutor as set out previously in this opinion.

The non-disclosure was a non-disclosure material to the issue of the guilt of the defendant. The most important evidence, of course, was the testimony of the prosecuting witness. Also of great importance was the testimony of the defendant. It must be assumed that the jury made judgments as to the credibility of this testimony. Also of very great importance was the testimony of Mr. Greenwalt concerning the alleged confession of the defendant. It must be assumed that the jury substantially considered that evidence in reaching its verdict. It is difficult to state the obvious, and it is obvious that confession evidence is of great importance in a criminal trial. Reference is made to the testimony of Mr. Greenwalt commencing at page 19 of this opinion. He was a strong witness and gave the impression of certainty. His testimony is materially at variance with the testimony Mr. Whitsell gave in his deposition. His testimony is at variance with the testimony of Mr. Whitsell given at the motion hearing.

The State urges that since Mr. Whitsell now remembers that the defendant said "Yes, it was forced. I raped her" (as stated in the affidavit of Mr. Whitsell set out at page 16 of this opinion) that the failure to disclose the loss of the notes is no longer material to the issue of guilt. I disagree. It must be noted that Mr. Whitsell at the motion hearing gave sincere appearance of attempting to state the very truth of the matter. However, there remain very real issues of memory credibility. It has been variously stated to the court that Mr. Whitsell refreshed his memory by reviewing other person's notes and by conversation with Mr. Greenwalt. I repeat as stated at page 18 of this opinion that at the motion hearing Mr. Whitsell told the court under oath that he did not read Mr. Greenwalt's report.

Suddenly at trial, defense counsel was faced with the fact that the State rested without calling Mr. Whitsell. Mr. Ament suggests that Mr. Pfeffer could have called Mr. Whitsell and that he could have further deposed Mr. Whitsell. Yes, and Mr. Ament could have and should have told Mr. Pfeffer that Mr. Whitsell in fact had no confession notes. Mr. Pfeffer lacked that knowledge in deciding whether to call Mr. Whitsell. From hind sight it appears that Mr. Pfeffer made the wrong decision. If he had had the information to which he was entitled, he probably would have made a different decision.

Why is this material to the issue of guilt. The alleged confession was not in writing. The alleged confession was not on tape recording although other statements made by him were tape recorded. The importance of the alleged confession in the determination of guilt then turns largely on credibility determinations by the jury. If the jury had known the totality of the circumstances of the alleged confession, and if they were told the entire circumstances regarding the memory of Mr. Whitsell, and if they knew of the various differences between the memory of Mr. Whitsell and of Mr. Greenwalt, their determination of credibility might be such as to have rendered a different verdict. I recognize that the record, even without the confession evidence, would have been sufficient to sustain a guilty verdict. I make no conjecture as to the guilt or innocence of the defendant. However, I am compelled to conclude that under the circumstances as stated the defendant was denied fair trial.

As previously stated on page 10 of this opinion, I find that defendant's motion for new trial should be granted for the reasons stated in paragraphs 20 and 6 of the motion.

II. We need not decide whether we would have affirmed if the trial court had overruled defendant's motion for new trial. Neither do we need to say whether defendant was deprived of due process un-

der *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Rule 23(2) of the rules of criminal procedure, after enumerating various grounds, states in paragraph (9) that the court may grant a new trial "When from any other cause the defendant has not received a fair and impartial trial." Trial courts, which are closer to the actual trial than the appellate courts are, have discretion in granting or denying new trials based on fair trial considerations. *State v. Wright,* 309 N.W.2d 891 (Iowa 1981); *State v. Washington,* 308 N.W.2d 422 (Iowa 1981); *State v. Mayes,* 286 N.W.2d 387 (Iowa 1979); *State v. Campiano,* 261 Iowa 509, 154 N.W.2d 845 (1967); *State v. Sanders,* 260 Iowa 327, 149 N.W.2d 159 (1967); *State v. Benson,* 247 Iowa 406, 72 N.W.2d 438 (1956); *State v. Thompson,* 241 Iowa 16, 39 N.W.2d 637 (1949); *Bletzer v. Wilson,* 224 Iowa 887, 276 N.W. 836 (1937); 58 Am.Jur.2d *New Trial* § 212, at 432–33 (1971) ("Ordinarily a motion for a new trial is directed to the sound discretion of the trial court, and on appeal from an order entered by the trial court in the exercise of discretion the presumption is that the trial court properly exercised its discretion."); 24 C.J.S. *Criminal Law* § 1422, at 12 (1961) ("Since the consequences of refusing a new trial are serious and not fully corrected by a reversal, the trial courts have been admonished to be more liberal as to such grant where the ends of justice so demand."); *see also* Iowa R.App.P. 14(f)(3) ("In ruling upon motions for new trial the trial court has a broad but not unlimited discretion in determining whether the verdict effectuates substantial justice between the parties."), (4) ("The court is slower to interfere with the grant of a new trial than with its denial."). We will reverse a ruling only on a showing of an abuse of discretion. *State v. Pletka,* 310 N.W.2d 525, 529 (Iowa 1981). We hold that an abuse of discretion does not appear here.

We thus uphold the order of the trial court granting a new trial.

AFFIRMED AND REMANDED.