STATE of Iowa, Appellee,

v.

Rick L. HOLLAND, Appellant.

No. 90–1211.

Supreme Court of Iowa.

May 13, 1992.

Linda Del Gallo, State Appellate Defender, and Andi S. Lipman, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Thomas S. Tauber, Asst. Atty. Gen., William E. Davis, County Atty., and Michael Walton, Asst. County Atty., for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, SNELL and ANDREASEN, JJ.

ANDREASEN, Justice.

The defendant was convicted on two counts of burglary in the second degree and one count of attempted burglary. In this appeal, the defendant claims he was denied a fair trial because the jury, during its deliberations, inadvertently discovered the defendant's work release card; that the evidence was insufficient to support the convictions; and that the court should not have allowed the admission of certain tools found in the defendant's car as evidence.

We initially transferred this case to the court of appeals, which reversed the conviction based on the fair trial argument. We subsequently granted further review. Because we believe the defendant cannot show prejudice from the inadvertent discovery of his work release card in light of the overwhelming evidence connecting him with the crimes, we vacate the decision of the court of appeals and affirm the judgment of the district court.

## I. *Background.*

During the evening of March 4, 1990, a watchful citizen reported some suspicious activity to the Davenport police. What the citizen observed was a man, later identified as Richard Holland, looking into parked cars on a public street. During the time the citizen witness was watching, Holland showed specific interest in a Cadillac. The citizen testified that Holland was "doing something" with his hands near the passenger door of the Cadillac. The police, who had been contacted by telephone, soon arrived.

Holland submitted to the control of the first officer to arrive on the scene. He was frisked and placed in the backseat of the patrol car. After another police officer arrived, the citizen witness came forward and identified Holland as the man he had seen looking into the vehicles.

The police conducted a search of other cars in the area to check for any signs of

break-ins. Less than one block from the Cadillac, the police found a Pontiac with a broken window. Inside the car, the police found an object wrapped with a towel that had apparently been used to break the window. The glove compartment of the Pontiac had been ransacked and papers were strewn about the floorboard. The police were unable to locate the owner and left instructions in the car for the owner to contact them.

After Holland had been given his *Miranda* rights, he apparently told the police what type of car he was driving. Based on this information, the police located Holland's parked car a few blocks away. A visual observation from the outside of the car revealed: a partially concealed radar detector on the front seat, a black jacket on the rear seat floor and a tire iron protruding from underneath the jacket. Based upon the circumstantial evidence gathered to that point, the police obtained a search warrant for Holland's car. In executing the warrant, the police additionally found a screwdriver and pliers under the jacket as well as a billfold containing Holland's identification.

Holland was charged with two counts of second-degree burglary (Iowa Code § 713.5 (1989)) and one count of attempted burglary (Iowa Code § 713.6). Prior to trial, Holland made a motion in limine to exclude evidence of the tire iron, screwdriver and pliers. Following hearing, the motion was denied.

At trial, witnesses testified that there were marring scratch marks on the window of the Cadillac. The owner of the Cadillac testified that there was a radar detector inside it at the time Holland was arrested. Additional evidence established that there was sand and gravel located on the door of the Cadillac. A photograph was introduced into evidence that showed the crushed concrete and scratches on the window of the Cadillac. A police officer opined that the marks had come from a piece of concrete being smashed against the window.

The owner of the Pontiac testified that a black jacket was stolen from his car. He identified the jacket found in Holland's car as the jacket stolen from his car. Another witness, one whose car was broken into on the same night in the same vicinity but which the police had not discovered during their initial search of the area, testified that the passenger window to his car had been broken and that a radar detector had been stolen from his dashboard. He identified the radar detector found on the front seat of Holland's car as the one stolen from his car.

To connect Holland to his car and the items found therein, the State introduced the billfold that had initially been seized from the car during the search. Unbeknown to Holland, his attorney, and the prosecutor, Holland's "work release" card, in addition to his driver's license and other papers, was in his billfold when it was received as evidence. Holland's work release card was a laminated card with his picture and a statement that he was a participant in the State Work–Release Program.

After the State had presented its evidence in support of the charge, Holland moved for a judgment of acquittal on the ground that the State had not proven its case. The motion was denied. Holland then presented his evidence in support of his defense.

One of Holland's witnesses testified that she and Holland had been outside a bar and that an unidentified man was selling items from the trunk of a car in the parking lot. She stated the man had household items, clothing, radios, and a "Sunbeam mixer" in the trunk. Her testimony further indicated that she saw Holland purchase a "black item of clothing" and "some kind of radio or tape deck or something for the dashboard of a car."

Another witness, Holland's girlfriend, testified that she had put the tire iron, screwdriver and pliers into Holland's car three weeks prior to his arrest. She testified these tools had been used to disconnect some appliances and disassemble a bookcase in preparation for a move. This witness also testified as to Holland's fondness of Cadillac cars and his tendency to walk right up to a car to admire it.

At the conclusion of all the evidence, Holland renewed his motion for judgment of acquittal. This motion was again denied. Holland was convicted on two counts of burglary in the second degree for the jacket and the radar detector and one count of attempted burglary on his unsuccessful attempt to enter the Cadillac.

After the jury returned its verdict and had been dismissed, a juror asked both the prosecutor and defense counsel if the jury would be called back to determine whether Holland was an habitual offender. The juror related that one of them had found the work release card in the billfold as they were reviewing the evidence.

Based upon this information, Holland filed a motion for new trial. Following hearing, the motion was denied. The court stated:

[d]efendant, of course, should know what's in his own wallet. He testified— or would testify, according to the affidavit, that it was not in the wallet at the time he last saw it. There may be evidence produced by the State contrary to that. I think that's a question of evidentiary determination, credibility, perhaps on a post-conviction proceeding or something like that. I think the evidence was overwhelming concerning the defendant's guilt. On those grounds, a motion for new trial is denied.

The court sentenced Holland to ten years for each of the second-degree burglary counts and five years for the attempted burglary count.

Holland appealed primarily on the basis that he was denied a fair trial because the jury saw his work release card. He does not dispute that two cars were broken into and a jacket and a radar detector had been stolen. The court of appeals predicated reversal upon a combination of the theories of juror misconduct and the consideration of extrinsic evidence. Using our general standards to be applied in reviewing juror misconduct cases, the court of appeals found the district court had "abused its discretion in finding there was a reasonable probability the misconduct did not influence the verdict."

## II. *Fair Trial—Consideration of the Work Release Card.*

■ "Trial courts, which are closer to the actual trial than the appellate courts are, have discretion in granting or denying new trials based on fair trial considerations." *State v. LaDouceur*, 366 N.W.2d 174, 178 (Iowa 1985). *See also* Iowa R.App.P. 14(f)(3). The presumption is that the trial court properly exercised its discretion. *LaDouceur*, 366 N.W.2d at 178. We will reverse a trial court's ruling only upon a showing of an abuse of discretion. *Id.* We apply an objective test in evaluating the asserted misconduct and in determining whether a reasonable probability exists that it influenced the verdict or unfairly prejudiced the defendant.

■ We must first determine whether it was improper for the jury to have seen the work release card. If so, we then must determine if it was prejudicial for the jury to have seen the card. In determining a prejudicial effect, we review that evidence presented not related to the evidence alleged to have caused the error and weigh it against any prejudicial effect. *See, e.g., State v. Ellis*, 350 N.W.2d 178, 181 (Iowa 1984).

■ The only way the jury could properly have been informed Holland had previously been convicted of a crime, which was the practical effect of the jury seeing the card, was if such evidence was admitted to impeach Holland as a witness (Iowa R.Evid. 609) or if it was used to rebut evidence of Holland's good character (Iowa R.Evid. 404(a)). However, in his defense, Holland neither testified nor placed his character in issue. Thus, under the objective test it was clearly error, through no fault of its own, for the jury to see the work release card.

■ Having determined that error did occur, we turn to a determination of whether that error prejudiced appellant so as to require reversal. The jury's knowledge of a previous conviction from the work release card in this case is highly analogous to a jury learning about a defendant's prior

trouble with the law from the introduction of a "mug shot." *See generally* Annotation, *Admissibility, and Prejudicial Effect of Admission, of "Mug Shot," "Rogues' Gallery" Photograph, or Photograph Taken in Prison, of Defendant in Criminal Trial* 30 A.L.R.3d 908 (1970 & 1991 Supp.); *see also State v. Redding,* 169 N.W.2d 788 (Iowa 1969).

We are of the opinion that prejudice cannot be shown because of the overwhelming evidence, albeit much of it circumstantial, connecting Holland with the charged crimes. *See, e.g., State v. Kelly,* 111 Ariz. 181, 526 P.2d 720 (1974), *cert. denied,* 420 U.S. 935, 95 S.Ct. 1143, 43 L.Ed.2d 411 (1975) (introduction of police photograph with markings, which prosecutor refused to clarify did not indicate prior arrest, was clear error but was held harmless in light of other evidence against defendant); *People v. Chi Ko Wong,* 18 Cal.3d 698, 557 P.2d 976, 135 Cal.Rptr. 392 (1976) (en banc) (defendant not deprived of a fair trial where mug shots were shown to jurors because it was not reasonably probable that in the absence of the photographs the jurors would have reached a result more favorable to the defendant); *D'Anna v. State,* 453 So.2d 151 (Fla.Ct.App.1984) (admission of mug shot was error, but was harmless, where the evidence identifying the defendant as the perpetrator was overwhelming); *People v. Warnack,* 83 Ill.2d 112, 46 Ill.Dec. 141, 413 N.E.2d 1254 (1980) (introduction of mug shot bearing arrest date prior to offenses in question was error but was harmless where a trial without such error would have produced no different result); *Saffold v. State,* 162 Ind.App. 6, 317 N.E.2d 814 (1974) (even if jury concluded that defendant had prior record, it would not have contributed to the verdict in light of the overwhelming evidence of guilt); *State v. Serna,* 290 N.W.2d 446 (Minn.1980) (any error in admitting mug shots was harmless when evidence of guilt was overwhelming); *State v. Motley,* 740 S.W.2d 313 (Mo.Ct.App.1987) (admission of mug shots bearing police department markings was harmless error when other evidence of guilt was overwhelming); *State v. Segarra,* 26 N.C.App. 399, 216 S.E.2d 399 (1975) (admission of police photo that in-

cluded date was error, however, such error was not prejudicial when there was independent and overwhelming evidence of defendant's complicity in the crime charged). *See also Annotation* § 3[c] (& Supp.) and cases cited therein.

In contrast to the foregoing cases, Holland cites *United States v. Harman,* 349 F.2d 316 (4th Cir.1965), as support for his proposition that he was denied a fair trial. We recognize in certain cases that the evidence which implies a prior arrest or conviction will be so prejudicial as to deny the defendant a fair trial. *Harman* stands for this proposition. However, *Harman* is distinguishable. Unlike here, where there is overwhelming evidence of guilt that outweighs any prejudice, in *Harman* the "Government's case was not a strong one." *Id.* at 319. *See also, Saffold,* 317 N.E.2d at 818–19 (distinguishing *Harman*).

### III. *Other Issues.*

We have concluded that the facts of this case overcome any prejudice that may have been caused by the viewing of the work release card. Obviously, if the evidence is overwhelming as to overcome any prejudice from the viewing of the work release card, it is also sufficient to support a conviction.

■ With regard to the evidentiary ruling, we find Holland has not established that the trial court committed reversible error in admitting the tools found in his car. The test for admission of evidence is that the evidence must be relevant, and if such evidence is relevant, the probative value of such evidence must outweigh the prejudice that could be caused by its admission into the record. *Ellis,* 350 N.W.2d at 180. The admissibility of evidence is a matter for the exercise of the trial court's discretion. *Id.* Even if it were error for the trial court to have admitted the tool evidence in this case, there has been no showing of prejudice. *See id.* at 181.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.