**STATE of Iowa, Plaintiff–Appellee,**

v.

**Phelippe Lamar WRIGHT, Defendant–Appellant.**

No. 08–1610.

Court of Appeals of Iowa.

July 22, 2009.

Thomas J. Miller, Attorney General, Mary Tabor and Sheryl A. Soich, Assistant Attorneys General, Harold L. Denton, County Attorney, and Nicholas Maybanks, Assistant County Attorney, for appellant.

Mark C. Smith, State Appellate Defender, David Arthur Adams, Assistant Appellate Defender, and Erin K. Grundy, student intern, for appellee.

Considered by SACKETT, C.J., and EISENHAUER and DOYLE, JJ.

DOYLE, J.

The State appeals from a district court ruling granting Phelippe Wright a new trial following his conviction for second-degree sexual abuse in violation of Iowa Code section 709.3(2) (2001). We affirm the judgment of the district court.

## I. Background Facts and Proceedings.

In 1996, when Wright was twelve years old, he and his four-year-old sister, R.W., moved into the home of Marian Carter. Carter had several children of her own, including L.C., who was six years old when Wright and his sister began living with her family. Wright moved out of the home in 2002.

In 2005 L.C. and R.W. told Carter that Wright had sexually abused them for years while he lived with the family. Wright was charged by trial information with two counts of second-degree sexual abuse in violation of section 709.3(2) in June 2005. A jury trial began on February 11, 2008.

The case was submitted to the jury for its consideration on Friday, February 15, 2008, around 12:27 p.m. At approximately 3:40 p.m. that afternoon, the court was presented with five questions from the jury.[1] After consulting with the parties, the district court informed the jury that it could not answer their questions and directed them to refer to their own recollections of the evidence.

The jury continued deliberating the following Monday, February 18. At around 10:20 a.m., the court received another written note from the jury. The note stated:

1. The questions were: (1) "What are the differences between first degree and second degree of sexual abuse?" (2) "Why is he being tried as an adult if he was under 18 at the time of the allegations?" (3) "Sonya [Wright's girlfriend] was arrested and convicted for forgery and false report. Can we know if it is related to this case?" (4) "Who called the police department to say Phelippe wasn't coming to police interview?" and (5) "If Phelippe is convicted, to whom ... where would his annuity money go?"

"We have voted on Friday afternoon and this morning and are firmly six-six, six not guilty, six guilty. How long do our deliberations have to continue in order to declare a hung jury?" Wright moved for a mistrial. The court denied that motion and, with the parties' approval, instructed the jury:

> You have now been deliberating upon this case for a considerable period of time, and the Court deems it proper to advise you further in regard to the desirability of agreement, if possible.
>
> The case has been exhaustively and carefully tried by both sides and has been submitted to you for decision and verdict. It is the law that a unanimous verdict is required; and while this verdict must be the conclusion of each juror and not a mere acquiescence of the jurors in order to reach an agreement, it is still necessary for all the jurors to examine the issues and questions submitted to them with candor and fairness and with a proper regard for and deference to the opinion of each other. A proper regard for the judgment of others will greatly aid us in forming our own judgment.
>
> This case *must be decided by some jury* selected in the same manner this jury was selected, and there is no reason to think a jury better qualified would ever be chosen.
>
> Each juror should listen to the arguments of the other jurors with the disposition to be convinced by them; and if the members of the jury differ in their views of the evidence, such difference of opinion should cause each juror to scrutinize the evidence more closely and to reexamine the grounds of their disagreement.
>
> Your duty is to decide the issues of fact which have been submitted to you. In conferring, you should lay aside any mere pride of opinion and should bear in mind that the jury room is no place for espousing and maintaining, in a spirit of controversy, either side of a cause. The aim ever to be kept in view is to find the truth as it appears from the evidence, examined in light of the instructions of the Court.
>
> You will again retire to your jury room and reexamine your difference in a spirit of fairness and candor and try to arrive at a verdict.

(Emphasis added.)

The jury resumed deliberating at 11:23 a.m. At 4:00 p.m. the court received another note from the jury with the following questions: (1) "Friday morning, the defense attorney read from Jennifer Cira's [deposition] testimony. However, none of us heard what the statement said. Can we please review that part of Jennifer Cira's testimony?"[2] (2) "In Marian Carter's testimony, she made references to Mercedes and Jasmine living with her and possible case against Paul Brooks. Can we review that testimony of Marian Carter?"[3] and (3)

---

**2.** Jennifer Cira was employed by St. Luke's Child Protection Center and interviewed the alleged victims in this case. Defense counsel read the following excerpt from her deposition testimony:

> Ms. Cira was asked: "Let me—I just want to ask you a hypothetical question. If a child was referred to you that was involved in a sexual relationship with another child, both members of the same household, would you want to interview that child?" Ms. Cira answered: "Yes." Question:

"Would you—What would—Would you consider that a potential person who's been sexually abuse?" Answer: "I would want to find out more information about that, yes."

**3.** During the State's cross-examination of Carter, she was asked:

> Q. Marian, who is Mercedes Myers? A. Paul Brooks' daughter. My stepdaughter.
> Q. Does she live with you, too? A. She does.

"What is the time set by the Court for us to deliberate? As a jury, we have deliberated over all of the evidence we have notes on and are still not unanimous." The court informed counsel about the note and after some discussion determined,

It's my personal belief that this testimony will not change their inability to agree, but I'm willing to give it a shot, and I'll read both in since they're relatively brief. If you'd bring them back up, we'll read it, send them back out and give them about another half hour or so. And if nothing's budged, then we're going to call it a day and call it a case.

The court read the requested portions of testimony to the jury and sent them back to deliberate at 4:14 p.m. At 4:40 p.m., the jury returned a unanimous verdict finding Wright not guilty of sexually abusing R.W., but guilty of sexually abusing L.C.

Wright filed a motion for new trial pursuant, in pertinent part, to Iowa Rule of Criminal Procedure 2.24(2)(b)(4), which provides that the court may grant a new trial "[w]hen the verdict has been decided by lot, or by means other than a fair expression of opinion on the part of all jurors." Following a hearing, the district court granted the motion on that basis, noting its supplemental instruction to the jury contained language that was disapproved in *State v. Campbell*, 294 N.W.2d 803, 810 (Iowa 1980) (holding that language instructing the jury that the case "must be decided by some jury" was inaccurate and potentially coercive). The court determined,

Here, even though there was evidentiary support for the jury to convict the Defendant on one count and acquit him on the other, this Court cannot escape the gnawing doubt that this was more a

product of a belief that the case would have to be retried if they did not reach a unanimous verdict rather than based on a reexamination of the evidence. This is based on the split nature of the verdict after the jury's disclosure that they were divided six to six even though the verdict was reached a full five hours later. Thus, the Court finds Defendant is entitled to a new trial.

The State appeals, claiming the "court abused its discretion in granting the defendant a new trial based on a 'gnawing doubt' about the verdict-urging instruction the court submitted to the jury during deliberations."

## II. Scope and Standards of Review.

We review the district court's ruling on a motion for new trial for abuse of discretion. *State v. Atley*, 564 N.W.2d 817, 821 (Iowa 1997). "We will reverse only upon a showing that the court granted the new trial on grounds which were clearly unreasonable and untenable." *State v. Mercer*, 470 N.W.2d 67, 68 (Iowa Ct.App.1991). We are slower to interfere with the grant of a new trial than with its denial. *Id.*; *see also* Iowa R.App. P. 6.14(6)(d).

## III. Discussion.

"Supplemental instructions urging a jury to reach a unanimous verdict have 'long been sanctioned.'" *State v. Piper*, 663 N.W.2d 894, 911 (Iowa 2003) (citation omitted). The ultimate test in determining the propriety of a "verdict-urging instruction" is "whether the instruction improperly coerced or helped coerce a verdict or merely initiated a new train of real deliberation which terminated

---

Q. Do you know an individual by the name of Amy Fields? A. Yes.

Q. How do you know her? A. She is the social worker, I guess, for Mercedes and

Jasmine, who is Paul's other daughter, their case.

the disagreement." *Campbell,* 294 N.W.2d at 808. The content of this type of instruction is only one factor to consider in determining whether the jury was improperly coerced. *Piper,* 663 N.W.2d at 911. The supplemental charge must also be evaluated "in its context and under all the circumstances." *Id.* at 911–12 (citation omitted). Factors that might suggest a coercive effect include "an inquiry into the jury's numerical division, a speedy verdict after receiving the supplemental instruction, and language instructing the jury it must make a decision." *Id.* at 912.

In *Campbell,* our supreme court disapproved of language in a supplemental instruction stating that the case "must be decided by some jury" as inaccurate and potentially coercive. 294 N.W.2d at 810. The court noted such a statement is "simply not true" because the "possibility of a hung jury is an inevitable byproduct of our unanimous verdict requirement. Confronted with a mistrial, [the State] retain[s] the authority to request dismissal of the action." *Id.* (citation omitted). It concluded, however, that the instruction was not prejudicially coercive because "there was no evidence of possible coercion, other than the words of the instruction themselves." *Id.* at 811.

The supplemental instruction given by the trial court in this case contained the above-described language disapproved by the court in *Campbell.* The State nevertheless argues that the court erred in determining that language was prejudicially coercive under the circumstances presented here. But, as Wright asserts, "[w]e need not decide whether we would have affirmed if the trial court had overruled defendant's motion for new trial." *State v. LaDouceur,* 366 N.W.2d 174, 177 (Iowa 1985); *see also State v. Luncsford,* 428 N.W.2d 314, 315 (Iowa Ct.App.1988). "Trial courts, which are closer to the actual trial than the appellate courts are, have

discretion in granting or denying new trials based on fair trial considerations." *LaDouceur,* 366 N.W.2d at 178; *see also* Iowa R.App. P. 6.14(6)(c) ("In ruling upon motions for new trial the district court has a broad but not unlimited discretion in determining whether the verdict effectuates substantial justice between the parties."). "We will reverse a ruling only on a showing of an abuse of discretion." *LaDouceur,* 366 N.W.2d at 178. Such a showing has not been made here.

Although approximately five hours passed between the giving of the supplemental instruction and the verdict, *see Piper,* 663 N.W.2d at 912 (stating coercion more likely occurs when the jury returns a verdict shortly after receiving a supplemental instruction), the jury indicated it still had not reached a verdict before the additional testimony was read to them. We agree with the district court that it is difficult to see how that testimony, which was not related to any pivotal issue in the case, would have resolved the jury's disagreement. Yet less than thirty minutes after the testimony was read to the jury and shortly before the end of its second day of deliberations, the jury reached what the court appeared to have been concerned was a sort of compromise verdict, finding Wright not guilty on one count and guilty on the other. It was within the court's discretion to determine that verdict was not "a fair expression of opinion on the part of all jurors" despite its evidentiary support in the record. Iowa R.Crim. P. 2.24(2)(*b*)(4). That discretion was exercised by an experienced and well-seasoned trial judge who was in the best position to observe the trial dynamics and to sense whether something went awry in the jury room. *See State v. Lindsey,* 302 N.W.2d 98, 101 (Iowa 1981) ("Discretion is accorded in this area because of the trial court's proximity to the trial process...."). The trial court is afforded the presumption that

it properly exercised its discretion. *La-Douceur,* 366 N.W.2d at 178.

### IV. Conclusion.

In light of the foregoing, we do not believe the district court exercised its discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable," *State v. Reeves,* 670 N.W.2d 199, 202 (Iowa 2003), in determining Wright was entitled to a new trial based on the court's "gnawing doubt" that the jury's verdict "was more a product of a belief that the case would have to be retried if they did not reach a unanimous verdict rather than based on a re-examination of the evidence." This is precisely the type of discretionary call the law places in the prerogative of the trial court. We therefore affirm.

**AFFIRMED.**