**IN THE COURT OF APPEALS OF IOWA**

No. 13-0052
Filed June 11, 2014

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**JEROME POWER,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Linn County, Fae E. Hoover-Grinde, Judge.

     A defendant appeals his conviction for murder in the first degree. **AFFIRMED.**

     Mark C. Smith, State Appellate Defender, and Robert Ranschau, Assistant Appellate Defender, for appellant.

     Thomas J. Miller, Attorney General, Katie Fiala, Assistant Attorney General, and Jerry Vander Sanden, County Attorney, for appellee.

     Heard by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, P.J.**

Jerome Power appeals his conviction for first-degree murder. He argues the State did not offer sufficient evidence to support his conviction, his trial counsel did not provide effective assistance, and the district court abused its discretion by giving a supplemental jury instruction and denying his request for substitute counsel.

We affirm his conviction, finding substantial evidence he strangled the victim with specific intent to kill, malice aforethought, deliberation, and premeditation. We also conclude the district court did not abuse its discretion by giving the jury an *Allen* charge[1] or in denying Power's request for substitute counsel. We preserve his ineffective-assistance claim for possible postconviction-relief proceedings.

**I.     Background Facts and Proceedings**

On September 19, 2010, just after the ten o'clock news, sixty-eight-year-old Doris Bevins called her friend, Phillip Bemer, to discuss the next day's weather. While on the phone Phillip heard someone beating on Doris's door. He advised her against answering it. She told Phillip she "wasn't scared of nobody" and wanted to know "who in the hell was at her door at this time of night." When Doris answered the door, a man asked her if she had a gas or an electric stove. Doris first responded: "[I]t's a gas stove." Then Phillip heard her say: "What do you want?" and "Get the hell out of here." Doris next screamed: "Help. Oh, Lord

---

[1] The common name for verdict-urging or "dynamite" instructions comes from *Allen v. United States*, 164 U.S. 492, 501 (1896).

help me." After that, Phillip heard a gurgling noise and a loud thud, which gave him "cold chills on the other end of the phone."

Phillip called 911, and the police arrived at Doris's apartment a few minutes later. When the officers arrived, they announced their presence before they were forced to break down the apartment door. When they entered, the officers found Doris on the floor with her nightgown pulled over her head and a pair of pajama bottoms tied tightly around her neck. Emergency responders tried to resuscitate her but with no luck. They took Doris to the hospital where she died two days later. The medical examiner determined the cause of death to be ligature strangulation.

Soon after discovering Doris police saw Jerome Power standing in the doorway of Doris's kitchen. Power and his girlfriend, Mary Meier, lived in the apartment upstairs from Doris. Officers placed Power under arrest at gunpoint. When they searched Power, police found a cigarette lighter, a stocking cap, a red LED light, a cell phone, and a charger. Power told officers at least three times he wanted them to give his keys and the cell phone to Meier. The phone was later identified as belonging to Doris.

As police were taking Power to their squad car, he started yelling that he had seen a black male running out of Doris's apartment. During an interview at the station, Power told detectives he saw Terry Wilson, a white man, exit the apartment. Power also told them he called 911 from Doris's apartment and gave her CPR but later admitted those statements were not true. Power later sent a letter to investigators, dated July 13, 2011, casting aspersions on a black male

whom Power allegedly saw on the night in question. In his trial testimony, Power told the jury he went to Doris's apartment because she asked him to inflate an air mattress for her. He said he locked Doris's front door "just out of force of habit." He testified he walked to the back of the apartment to look for the air pump and did not see Doris on the floor until after he heard the police pounding on the door. He said he was going to the door when the police knocked it down.

The State charged Power by trial information with murder in the first degree, in violation of Iowa Code 707.1 and 707.2 (2009). A jury trial commenced on November 13, 2012. The jury returned with a guilty verdict on November 20, 2012. Power now appeals.[2]

## II.      Standards of Review

We review Power's substantial-evidence claim for correction of errors at law. *See State v. Jordan*, 663 N.W.2d 877, 879 (Iowa 2003). We treat his ineffective-assistance-of-counsel claim de novo. *See State v. Thompson*, 836 N.W.2d 470, 476 (Iowa 2013). We review the court's verdict-urging instruction and its denial of his request for substitute counsel for an abuse of discretion. *See State v. Tejada,* 677 N.W.2d 744, 749 (Iowa 2004); *State v. Wright*, 772 N.W.2d 774, 778 (Iowa Ct. App. 2009).

---

[2] Power filed a pro se brief on March 24, 2014. Under Iowa Rule of Appellate Procedure 6.901(2)(a), a pro se brief must be filed "within 15 days after service of the proof brief filed by their counsel." Power's attorney filed the appellant's brief on December 3, 2013. As March 24 is significantly outside the time limitation under the rule, we find his pro se brief to be untimely.

### III.    Analysis

### A. Substantial Evidence

The jury determined the State proved, beyond a reasonable doubt, the following elements of murder in the first degree:

1. On or about the 19th day of September, 2010, [Power] strangled Doris Bevins.
2. Doris Bevins died as a result of being strangled.
3. [Power] acted with malice aforethought.
4. [Power] acted willfully, deliberately, and premeditatedly with the specific intent to kill Doris Bevins.

We will uphold a jury verdict if it is supported by substantial evidence. *State v. Serrato*, 787 N.W.2d 462, 465 (Iowa 2010). We view the evidence in the light most favorable to the State. *State v. Henderson*, 696 N.W.2d 5, 7 (Iowa 2005). In brief, the trial evidence showed police found Power in Doris's apartment with the door locked, and Doris dying on the floor. He also had her cell phone in his pocket.

Power does not admit killing Doris but argues on appeal "the attacker" did not act deliberately, with premeditation, or malice aforethought. He argues the attack occurred on the spur of the moment. Power points to the fact Doris was strangled with pajama bottoms as showing a lack of forethought. If the attacker had planned to kill Doris, he asserts, the use of pajama bottoms would not be a likely murder weapon. He also questions the State's proof of motive, asserting "things were going well for him" and he had no reason to harm Doris, who had been his neighbor for four years.

The State counters that motive is not an element of the crime and its proof is not essential to sustaining a conviction. *See State v. Knox*, 18 N.W.2d 716,

724 (Iowa 1945). But the State also identifies a potential motive. The State contends the jury could have determined from the evidence that Power attacked Doris to steal her cell phone. Power testified he did not have a cell phone at the time of his arrest, having sold his at a pawn shop. Power had pocketed Doris's cell phone and repeatedly asked police to give the phone to his girlfriend.

As for malice aforethought, the State argues it is not so much a matter of timing, as a fixed purpose to do harm. *See State v. Lee*, 494 N.W.2d 706, 707–08 (Iowa 1993) ("The relationship that must be shown between the state of mind that is malice aforethought and the homicidal act is more accurately characterized as a causal relationship than as a temporal relationship."). The State also emphasizes deliberation and premeditation need not exist for any particular length of time. *See State v. Wilkens*, 346 N.W.2d 16, 20 (Iowa 1984). The State argues strangulation, using pajama pants as a ligature, could not be unintentional and could serve no lawful purpose.

The State's evidence did not leave much room for the jury to wonder "whodunit." Police responded to Bemer's 911 call within six minutes. The responding officers found the lights on and pounded on Doris's door for nearly two minutes, shouting more than a dozen times: "Doris, it's the police. You can open the door." Police described her apartment as "very small." Therefore, the jurors could have disbelieved Power's testimony he entered without seeing her body on the floor. But even if the jurors accepted that testimony, they could have believed an innocent person in that situation would have responded to the police

announcements and reached the door to unlock it before officers knocked it down.

We also agree the nature of the killing in this case, pulling pajama pants tightly around the elderly victim's neck, showed a fixed purpose to do physical harm and took sufficient time to premeditate or deliberate. *See State v. Buenaventura*, 660 N.W.2d 38, 48 (Iowa 2003) (showing premeditation and deliberation from the manner of the killing and use of a weapon). The jury could also infer Power's deliberation and premeditation from his act of locking Doris's front door to avoid being interrupted during the attack.

In addition, the jury could infer Power's guilty knowledge from his evolving version of events told to police and his effort to cover up his possession of the victim's cell phone. *See State v. Blair*, 347 N.W.2d 416, 422 (Iowa 1984) (finding a defendant's inconsistent statements are probative circumstantial evidence from which a jury may infer guilt). All the evidence, viewed in a light most favorable to the verdict, was sufficient to convict Power of first-degree murder.

### B. Ineffective Assistance of Counsel

At trial, Power testified he suffered from a severe infection that caused two fingers on his right hand to fuse, leaving him unable to bend them. Meier, his girlfriend, testified Power was unable to a make a fist with that hand. Trial counsel did not mention the testimony concerning Power's physical disability in closing argument.

On appeal, Power faults his trial attorney for not more vigorously pursuing the theory that his hand injury left him unable to strangle the victim. Power

claims his counsel was ineffective for not presenting testimony from his treating physician. He contends: "Such unbiased testimony would have been helpful to the jury and would have established that Jerome was physically unable to tie the pajama bottoms around Doris's neck."

To establish ineffective assistance of counsel, Power must prove his attorney breached an essential duty and prejudice resulted. *See State v. Null*, 836 N.W.2d 41, 48 (Iowa 2013). Prejudice is shown by a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Atwood*, 602 N.W.2d 775, 784 (Iowa 1999). Failure to prove either element by a preponderance of the evidence is fatal to the claim. *State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003).

Generally, we do not resolve claims of ineffective assistance of counsel on direct appeal. *State v. Biddle*, 652 N.W.2d 191, 203 (Iowa 2002). We prefer to leave such claims for postconviction-relief proceedings. *State v. Lopez*, 633 N.W.2d 774, 784 (Iowa 2001). Those proceedings allow the parties to develop an adequate record "and the attorney charged with providing ineffective assistance may have an opportunity to respond to defendant's claims." *Biddle*, 652 N.W.2d at 203.

In this case, the record is not sufficiently developed for us to decide the claim of ineffective assistance of counsel. We preserve this issue for possible postconviction-relief proceedings.

**C. The *Allen* Charge**

After deliberating for more than nine hours, the jury sent a question to the court.  The question read: "The jury cannot come to a unanimous decision! Where do we go from here?"  After meeting with the parties on the record, the court proposed the following supplemental instruction:

> You have been deliberating on this case for a considerable period of time, and the Court deems it proper to advise you further in regard to the desirability of agreement, if possible.
> The case has been exhaustively and carefully tried by both sides and has been submitted to you for decision and verdict, if possible.  It is the law that a unanimous verdict is required; and while this verdict must be the conclusion of each juror and not mere acquiescence of the jurors in order to reach an agreement, it is still necessary for all jurors to examine the issues and questions submitted to them with candor and fairness and with a proper regard for, and deference to, the opinion of each other.  A proper regard for the judgment of others will greatly aid us in forming our own judgment.
> Each juror should listen to the arguments of other jurors with a disposition to be convinced by them; and if the members of the jury differ in their views of the evidence, such difference of opinion should cause them to scrutinize the evidence more closely and to reexamine the grounds of their problem.  Your duty is to decide the issues of fact which have been submitted to you, if you can conscientiously do so.  In conferring, you should lay aside all mere pride of opinion and should bear in mind that the jury room is no place for espousing and maintaining, in a spirit of controversy, either side of a cause.  The aim ever to be kept in view is the truth as it appears from the evidence, examined in the light of the instructions of the Court.
> You will again retire to your jury room and examine your differences in the spirit of fairness and candor and try to arrive at a verdict.

Defense counsel objected to the instruction as putting pressure on the jurors in the minority and urged the court to instead advise the jury to "continue deliberating."  Over counsel's objection, the court provided the jury with this supplemental instruction.  About two and one-half hours later, the jury returned a

guilty verdict. Power complains on appeal the *Allen* charge "can be subtly–or perhaps not so subtly–coercive to the jury."

Our supreme court has refused to say giving a so-called *Allen* charge is per se error. *State v. Cornell*, 266 N.W.2d 15, 19 (Iowa 1978). In fact, district courts enjoy wide latitude to deliver verdict-urging instructions in response to a reported deadlock by the jury. *See State v. Campbell*, 294 N.W.2d 803, 808-09 (Iowa 1980). But such a supplemental instruction may not improperly coerce a verdict. *Id.* at 808. "The ultimate test is whether the instruction improperly coerced or helped coerce a verdict or merely initiated a new train of real deliberation which terminated the disagreement." *Id.* A supplemental instruction will be evaluated in context and considering all the circumstances. *Wright*, 772 N.W.2d at 778.

*Allen* instructions should not discuss the expense of litigation, the numerical split of the jury, or direct jurors in the minority to reevaluate their thought processes. *See Campbell*, 294 N.W.2d at 809. The instruction given in Power's case avoids those pitfalls. At oral argument, defense counsel asserted the instruction was coercive because it stated: "a unanimous verdict is required." Read in context, we do not find that sentence to be improper. The overall language is strikingly similar to the *Campbell* instruction. *Id.* (advising the jury its verdict "must be the conclusion of each juror and not a mere acquiescence of the jurors in order to reach an agreement"). The court was not informed of the ratio of disagreement and did not address any special directives to the jurors holding the minority viewpoint. Instead, the court encouraged thoughtful

consideration of all viewpoints before forming individual judgments. That sentiment forms a basic attribute of the jury process itself. *See United States v. Fioravanti*, 412 F.2d 407, 417 (3d Cir. 1969). The court even softened the language by instructing the jurors to reach a verdict "if possible" and asking them to "try to" arrive at a verdict.

The additional deliberation time from the giving of the *Allen* charge to verdict was the same in this case as in *Campbell*, 294 N.W.2d at 811. In *State v. Kelley*, 161 N.W.2d 123, 126 (Iowa 1968), the court found no coercion from a similar time frame. We conclude the district court did not abuse its discretion in giving the supplemental instruction at issue here.

### D. Substitute Counsel

In his final assignment of error, Power claims the district court abused its discretion in denying his request for substitute counsel.

On September 7, 2012, Power filed a pro se motion arguing he and his attorneys had a breakdown in communication. The trial court held a hearing and asked Power about his complaints on October 8, 2012. Power testified he was unable to discuss his case with his attorneys, Steve Addington and Jason Dunn. He said they tried to intimidate him by yelling, misled him, withheld information from him, and failed to investigate leads. In the hearing, Power recalled two occasions when he felt counsel was "inappropriate and unprofessional" and he did not feel "comfortable" with counsel. The attorneys told the court they provided Power with everything he had requested and indicated some of his complaints they were hearing for the first time. They assured the court they were

ready to go to trial. Attorney Dunn said they would provide Power with any further documentation he wished to have in his possession and "we can certainly try to be as diplomatic as possible in our further dealings with him if he feels at this point that we've been or I have been argumentative."

The court declined Power's request for substitute counsel, telling him the Sixth Amendment did not guarantee "you are going to consider your attorney a friend" and sometimes defense counsel must tell their clients things that they do not care to hear.

On appeal, Power argues the breakdown in communications with counsel "may have altered defendant's trial strategy." He does not explain what strategy was changed by the denial of substitute counsel.

"Where a defendant represented by a court-appointed attorney requests the court appoint substitute counsel, sufficient cause must be shown to justify replacement." *Tejeda*, 677 N.W.2d at 749–50. "Sufficient cause includes a conflict of interest, irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *State v. Lopez*, 633 N.W.2d 774, 778 (Iowa 2001). A defendant must present evidence of "a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with his attorney that meaningful communication was not possible." *Tejada*, 677 N.W.2d at 752 (quoting *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002)). The district court must conduct some kind of inquiry to determine if a complete breakdown in communication has occurred. *Id.* at 751.

The district court appropriately held a hearing on Power's motion and thoroughly explored his concerns. The hearing record did not reveal sufficient cause to replace Power's attorneys. Power expressed dissatisfaction with the tone used by counsel and said he "just felt uncomfortable" with their representation. He also wanted printouts of exhibits to view in his jail cell, rather than just seeing evidentiary photographs on the computer. At the close of the hearing, the attorneys were responsive to Power's requests. The situation described by Power was not "a complete breakdown in communication." We find no abuse of discretion in the court's denial of Power's pro se motion.

**AFFIRMED.**