**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 15, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | |
| v. | No. 14-2000 |
| | (D.Ct. No. 1:06-CR-00759-MCA-2) |
| JONATHAN PABLO, | (D. N.M.) |
| Defendant - Appellant. | |

_____

**ORDER AND JUDGMENT**[*]

Before **PORFILIO** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

_____

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

A jury convicted Appellant Jonathan Pablo of aggravated sexual abuse (against a minor involving vaginal rape), kidnaping, assault, and carjacking. *See*

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

*United States v. Pablo*, 625 F.3d 1285, 1290 (10th Cir. 2010) (*Pablo I*). The

district court sentenced him to 200 months imprisonment on his convictions for

rape, kidnaping, and carjacking, to run concurrently with a 120-month sentence

for his conviction for assault. *Id.* We affirmed Mr. Pablo's convictions, *see id.* at

1303, which the Supreme Court vacated and remanded for consideration in light

of its decision in *Williams v. Illinois*, 567 U.S. ___, 132 S. Ct. 2221 (2012). *See*

*Pablo v. United States*, 133 S. Ct. 56 (2012). On remand, we again affirmed Mr.

Pablo's convictions. *See United States v. Pablo*, 696 F.3d 1280, 1302 (2012)

(*Pablo II*). While on remand, Mr. Pablo filed the instant motion for a new trial on

claims of newly-discovered medical evidence and *Brady* violations, which the

district court denied. While Mr. Pablo now appeals the denial of his motion for a

new trial, his attorney has filed an *Anders* brief and a motion to withdraw as

counsel. *See Anders v. California*, 386 U.S. 738, 744 (1967). For the reasons set

forth hereafter, we grant counsel's motion to withdraw and dismiss this appeal.

## I. Factual and Procedural Background

Facts supporting Mr. Pablo's convictions are contained in our prior

decisions on appeal and their reiteration is unnecessary for our disposition of this

appeal. *See Pablo II*, 696 F.3d at 1284-86; *Pablo I*, 625 F.3d at 1288-90. In

moving for a new trial, Mr. Pablo alleged: 1) the SAER (Sexual Assault

Examination Report),[1] mentioning tears to the posterior fourchette and prepared by Dr. Linda Lucy Boulanger, who treated the victim, was improperly suppressed given it was not provided to the defense until the morning she testified at trial; and 2) in testifying on her treatment of the victim after the alleged sexual assault, Dr. Boulanger improperly gave an opinion, without a voir dire examination on her expertise, that the tears were consistent with non-consensual intercourse. Based on these circumstances, Mr. Pablo alleged the newly-discovered medical evidence resulted in his being unable to discredit Dr. Boulanger for the purpose of producing an acquittal at a new trial or otherwise to prepare a defense to show fourchette tears are not necessarily diagnostic of rape but may be present in cases of consensual sexual intercourse under certain conditions. He also claimed *Brady* violations occurred because the evidence was "favorable" to him, was suppressed by the government either willfully or inadvertently, and caused prejudice.

The district court denied Mr. Pablo's motion for new trial. It determined, in part: 1) the government only intended to call Dr. Boulanger as a fact witness as to her first-hand observations of the victim, and therefore no written summary for an expert witness was necessary; 2) the defense failed to object to Dr. Boulanger's opinion statement regarding the fourchette tears and, instead, elicited

---

[1] The SAER is also referred to in the record and Appellant's brief as the SANE report and is different than another document, also filled out by the same doctor, entitled "Crownpoint Triage and Nurses Notes" (hereafter "triage notes"), both of which mention the fourchette tears.

further opinion testimony on cross-examination, and therefore the government did not violate any rules regarding her opinion testimony; and 3) the defense received notice of the fourchette tears when it received the triage notes months prior to trial which were filled out by the same doctor at the time of treatment and expressly noted such tears. As a result, it concluded information on the fourchette tears did not qualify as "newly-discovered" evidence nor was it otherwise impermissibly suppressed. It also concluded a few minutes of legal research would have led counsel to numerous sexual assault cases discussing the significance of evidence on the injury to a victim's posterior fourchette and that no *Brady* violation occurred, as evidence on the posterior fourchette tears was provided months prior to the trial and therefore not suppressed by the government.

## II. Discussion

After Mr. Pablo filed a notice of appeal, his appointed counsel, who participated in his motion for a new trial, but not his prior trial, filed an *Anders* motion and appeal brief, explaining a review of the record revealed no nonfrivolous issues to appeal, and moving for an order permitting his withdrawal as counsel. *See Anders*, 386 U.S. at 744. In support of the *Anders* filing, counsel notes: 1) the doctor's scrawls regarding her finding of fourchette tears are contained on the last page of the triage notes and therefore are not "newly-discovered evidence"; 2) no request for a trial continuance or suspension of trial

-4-

was made nor was the doctor recalled for voir dire or further examination; and 3) no *Brady* violation arose because the triage notes with the information about the tears were prepared on the same date[2] as the alleged attack and provided to the defense months in advance of trial. Finally, counsel points out that because the government provided the triage notes and evidence of the fourchette tears to the defense months prior to the trial, the defense had ample time to prepare for cross examination and any failure to learn of this evidence was caused by the defense's own lack of diligence.

Pursuant to *Anders,* this court gave Mr. Pablo an opportunity to respond to his counsel's *Anders* brief. *See* 386 U.S. at 744. Mr. Pablo did not file a response. The government filed a notice of its intention not to file an answer brief in this appeal.

As required by *Anders*, we have conducted a full examination of the record before us. *See* 386 U.S. at 744. As Mr. Pablo's counsel acknowledges and the district court explained, the government provided the triage notes containing the doctor's notation on the fourchette tears to the defense months before his trial. Thus, neither the evidence concerning the fourchette tears nor the doctor's

---

[2] The record shows the triage notes were prepared the same morning as the attack which extended into the morning of January 30, 2005. *See Pablo II*, 696 F.3d at 1284.

testimony as to the existence of such tears is newly-discovered evidence,[3] and it is therefore evident the defense received notice sufficient to prepare a defense, including cross-examination of the doctor who made the entry about the tears on the triage notes. Moreover, the defense waived or forfeited[4] its objection to Dr. Boulanger's opinion statement–that the tears were consistent with non-consensual sex–when it failed to object to the rendering of such an opinion and did not request a continuance or conduct voir dire but, instead, proceeded to elicit additional opinion testimony from that witness. As to any *Brady* violations,[5] none occurred because the allegedly-suppressed evidence concerning the tears was furnished in advance of trial in the form of the doctor's triage notes. Finally, the

---

[3] To prevail on a motion for a new trial based on newly-discovered evidence, the defendant must establish:

> (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by lack of diligence; (3) the new evidence is not merely impeaching or cumulative; (4) the new evidence is material to the principal issues involved; and (5) the new evidence would probably produce an acquittal if a new trial were granted.

*United States v. Hill*, 737 F.3d 683, 687 (10th Cir. 2013), *cert. denied*, 134 S. Ct. 1905 (2014).

[4] A waived claim is one a party knowingly and intelligently relinquishes while a forfeited claim is one a party merely failed to preserve. *See United States v. Cornelius*, 696 F.3d 1307, 1319 (10th Cir. 2012).

[5] To establish a *Brady* violation for the purpose of a new trial, a defendant must show: 1) the prosecution suppressed evidence; 2) which was favorable to the defendant; and 3) was material. *See United States v. Reese*, 745 F.3d 1075, 1083 (10th Cir. 2014).

-6-

jury clearly credited the testimony of the government's witnesses, including the victim herself,[6] as well as DNA and serology lab evidence,[7] in finding Mr. Pablo committed the crimes of sexual assault by rape, kidnaping, carjacking, and assault. Thus, even without the doctor's testimony, the fourchette notation, and her opinion, "sufficiently strong evidence" on the conviction for rape exists "to sustain our confidence in the jury's verdict." *Reese*, 745 F.3d at 1084 n.6. As a result, no nonfrivolous reason exists supporting an appeal. Our conclusion is bolstered by Mr. Pablo's failure to take the opportunity to offer any additional nonfrivolous reason warranting a new trial.

III. Conclusion

For these reasons, we **GRANT** counsel's motion to withdraw and **DISMISS** the appeal.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge

---

[6] *See Pablo II*, 696 F.3d at 1284-86.

[7] *See id.* at 1286-87, 1293-95 (explaining DNA and serology analyses were conducted and holding no error occurred in allowing testimony of lab employee on results which showed Mr. Pablo's DNA was found in the victim's genitalia).