# IN THE SUPREME COURT OF IOWA

No. 18–1777

Submitted September 16, 2020—Filed October 23, 2020

**STATE OF IOWA,**

Appellee,

vs.

**JOSHUA KELLY URANGA,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Boone County, Stephen A. Owen, District Associate Judge.

The defendant appeals his conviction for failure to comply with the sex offender registry. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Andrew J. Boettger of Hastings, Gartin, & Boettger, LLP, Ames (until withdrawal), and then Agnes Warutere of the Warutere Law Firm, PLLC, Ankeny, for appellant.

Thomas J. Miller, Attorney General, Louis S. Sloven, Assistant Attorney General, Dan Kolacia, County Attorney, and Matthew Speers, Assistant County Attorney, for appellee.

**McDONALD, Justice.**

Joshua Uranga has been a registered sex offender in Iowa since 2014.  In November 2016, Uranga failed to appear at the sheriff's office to verify his registration information.  He was charged with and convicted of failure to comply with the sex offender registry, first offense, in violation of Iowa Code sections 692A.103, 692A.108, and 692A.111 (2016).[1]  In this direct appeal, Uranga contends the district court abused its discretion in denying his motion for new trial based on a claim of newly discovered evidence.

I.

In 2014, Uranga registered as a sex offender in Iowa.  He was classified as a tier III sex offender.  *See* Iowa Code § 692A.102(1)(*c*), (3), (4), (5) (2014) (designating tier III offenses and offenders).  As a tier III registered sex offender, Uranga was required to appear at the sheriff's office in his county of residence four times per year to verify his registration information.  *See* Iowa Code § 692A.108(1)(*c*) (setting forth verification requirements).  In 2016, Uranga was required to appear during the months of February, May, August, and November.  Uranga was aware of this requirement.  Uranga did not appear at the sheriff's office to verify his registration information during the month of November.  Instead, he appeared on December 7.  On December 13, the State charged Uranga with failure to comply with the sex offender registry, first offense.

The case was tried to a jury.  Uranga testified at trial.  He testified he previously had been tardy in reporting to the sheriff's office.  In those instances, he testified, he had received a "flyer," or letter, reminding him to appear in person and verify his registration information.  Although the

---

[1]All references to the Iowa Code shall be to the 2016 Code unless indicated otherwise.

letters were not offered into evidence, the witnesses, including Uranga, testified regarding the content of these letters. The letters were form letters. The letters stated Uranga was in noncompliant status. The letters stated if Uranga did not appear in the sheriff's office within five business days of receipt of the letter, he would be charged with failure to comply with the sex offender registry. Uranga testified he had always reported to the sheriff's office within five business days of receiving one of these letters and had never been charged with the failure to comply with the sex offender registry.

With respect to November, Uranga admitted he knew he was required to appear and verify his registration information and admitted he did not do so:

> Q. You indicated that you've been registering as a sex offender since 2014, but that's only in the State of Iowa, right? A. Yes, sir.
>
> Q. You've been registering as a sex offender since 2003? A. Yes, sir.
>
> Q. You've had plenty of interactions and plenty of times to come in and verify relevant information? A. Yes.
>
> Q. You know the system and what you're supposed to do? A. I do know that, sir, yes.
>
> Q. You know you had to verify your information in November 2016? A. I knew that, sir, yes.
>
> Q. You didn't do it? A. I did so not in the month of November . . . .

Uranga testified, however, that he believed he had five additional business days after the end of November to appear and verify his information pursuant to a letter left at his grandmother's house in December.

> Q. Okay. So did you know or have reason to know or suspect that you had five business days after the end of November to come in and register? A. Because they left the

flyer at the house for my grandmother, and I mean, I got it. I got that flyer.

Q. Okay. And did you come in on the fifth day? A. Yes, sir. Fifth business day.

Uranga did appear at the sheriff's office on December 7, which was five business days after the last day of November. He was nonetheless charged with failure to comply with the sex offender registry.

At trial, the parties disputed whether the December letter was material to the case. At the conference on jury instructions, Uranga's trial counsel acknowledged that his original theory of the case—that the statute provided a five-day grace period—"was flawed." Rather than requesting the district court instruct the jury on his flawed five-day-grace-period theory, trial counsel instead requested the district court instruct the jury on a promise-of-leniency theory. Specifically, "That if a promise of leniency is made by a law enforcement official, a person is entitled to--is entitled to rely on that and not follow and expect to get arrested again." Trial counsel further argued that "if we're going to use November, then I think promise of leniency is a recognized legal concept and the jury needs to be instructed on that." The prosecutor resisted the instruction on the ground that a promise-of-leniency argument was a legal question that should have been presented in a pretrial motion and not a fact question for the jury.

The district court agreed with the prosecutor and denied the requested instruction. The marshaling instruction required the State to prove the following:

1. Joshua Uranga had a known legal duty as a Registered Sex Offender to appear, in person, at the Sheriff's Office of Boone County for the month of November, 2016.

2. Joshua Uranga voluntarily and intentionally failed to appear in person at the Boone County Sheriff's Office in the month of November 2016.

The jury found Uranga guilty as charged.

Uranga filed numerous posttrial motions, most of which were filed pro se. At issue in this case is his motion for new trial based on newly discovered evidence.[2] The motion was filed by new counsel appointed after the jury rendered its verdict. In the motion, posttrial counsel stated she represented Uranga in another case and a letter from the sheriff's office dated December 2, 2016, was in the discovery file in that case. The December letter was addressed to Uranga and provided:

> You were on the list to appear in our office to verify your registration information for the month of November.

> At this time, you are non-compliant status. If you do not appear in our office within 5 business days of receipt of this letter, you will be charged with the offense of Failing to Comply with the SOR.

The letter was signed by Gregg Elsberry, Sheriff, Boone County. Uranga argued the December 2 letter entitled him to a new trial. He argued a sheriff can modify or waive the statutory requirement for in-person verification of registration information. Thus, Uranga argued, the letter was critical to prove Uranga "registered within the time outlined by the allowance/waiver."

The district court denied the motion on the ground the newly discovered evidence was not material and would not have changed the jury's verdict. The district court reasoned the relevant statute does not provide a grace period, the jury was correctly instructed on the law, and

---

[2]The motion was styled "motion in arrest of judgment & motion for new trial/set aside jury verdict based on new evidence." The only issue presented to and decided by the district court was a motion for new trial based on newly discovered evidence. To the extent the defendant now presents alternative arguments in support of his motion for new trial, the arguments are not preserved for appellate review, and we decline to address them. *See Goode v. State*, 920 N.W.2d 520, 526 (Iowa 2018) ("As a general rule, we do not address issues presented on appeal for the first time, and we do not remand cases to the district court for evidence on issues not raised and decided by the district court.").

the letter thus would not have changed the outcome. The court of appeals affirmed, and we granted Uranga's application for further review.

## II.

"We apply an abuse of discretion standard when reviewing the district court's rulings on . . . motions for new trial based on newly discovered evidence." *State v. Smith*, 573 N.W.2d 14, 17 (Iowa 1997). "An abuse of discretion occurs when the trial court exercises its discretion 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *State v. Walker*, 935 N.W.2d 874, 877 (Iowa 2019) (quoting *State v. Tipton*, 897 N.W.2d 653, 690 (Iowa 2017)). The district court is vested with "[u]nusually broad discretion" when "ruling on a motion for new trial on the basis of newly discovered evidence." *State v. Miles*, 490 N.W.2d 798, 799 (Iowa 1992). However, "we have made it clear that the court should closely scrutinize them and grant them sparingly." *State v. Carter*, 480 N.W.2d 850, 852 (Iowa 1992).

## III.

Iowa Rule of Criminal Procedure 2.24(2)(*b*)(8) authorizes the court to grant a new trial "[w]hen the defendant has discovered important and material evidence in the defendant's favor since the verdict, which the defendant could not with reasonable diligence have discovered and produced at the trial." A motion for new trial on the basis of newly discovered evidence should be granted only where the evidence "(1) was discovered *after* the verdict, (2) could not have been discovered earlier in the exercise of due diligence, (3) is material to the issues in the case and not merely cumulative, and (4) probably would have changed the result of the trial." *Smith*, 573 N.W.2d at 21 (quoting *State v. Jefferson*, 545 N.W.2d 248, 249 (Iowa 1996)).

We address whether Uranga established the December letter could not have been discovered earlier in the exercise of due diligence. The showing of diligence required "is that a reasonable effort was made." *State v. Compiano*, 261 Iowa 509, 519, 154 N.W.2d 845, 850 (1967). The defendant is "not called upon to prove he sought evidence where he had no reason to apprehend any existed." *Id.* (quoting *Westergard v. Des Moines Ry.*, 243 Iowa 495, 503, 52 N.W.2d 39, 44 (1952)). However, a defendant "must exhaust the probable sources of information concerning his case; *he must use that of which he knows*, and *he must follow all clues* which would fairly advise a diligent man that something bearing on his litigation might be discovered or developed." *Id.* (emphasis in original) (quoting *Westergard*, 243 Iowa at 503, 52 N.W.2d at 44). "Many, perhaps most, newly discovered evidence claims must be rejected on the basis of the second standard (could not have been discovered earlier in the exercise of due diligence)." *Miles*, 490 N.W.2d at 799.

As a general rule, a defendant is not entitled to a new trial on the basis of newly discovered evidence where the defendant was aware of the evidence prior to the verdict but made no affirmative attempt to obtain the evidence or offer the evidence into the record. Thus, in *State v. Jefferson*, we affirmed the district court's denial of the defendant's motion for new trial where the defendant learned of the evidence during trial but took no affirmative action to get the evidence in the record prior to the jury returning its verdict. 545 N.W.2d at 251. We explained the defendant must seek out evidence of which he was aware to "prevent the defendant from gambling on a defense verdict while holding back his grounds for a new trial in case the jury returned a verdict of guilty." *Id.* at 250.

Similarly, in *State v. Compiano,* we affirmed the district court's denial of the defendant's motion for new trial where the defendant learned

of potential new evidence during trial but did not seek a continuance to investigate the matter. *See* 261 Iowa at 520, 154 N.W.2d at 851. We affirmed the trial court's finding that "due diligence had not been shown." *Id.* at 519, 154 N.W.2d at 851. We explained the rationale of the rule was to bring finality to the criminal trial and to avoid unfair gamesmanship, stating, "Courts are aware that, unless a movant is required to show timely due diligence in the discovery of new evidence, his newly discovered evidence might be withheld as trial strategy to obtain a second trial if needed." *Id.* at 518, 154 N.W.2d at 850.

In light of the foregoing, we conclude Uranga failed to establish the December letter could not have been discovered prior to the verdict in the exercise of due diligence because Uranga was aware of the December letter prior to the jury returning its verdict. At trial, Uranga testified he received the sheriff's letter. He testified the sheriff's office "left the flyer at the house for my grandmother, and I mean, I got it. I got that flyer." Uranga had reason to apprehend prior to trial and prior to the verdict that the letter existed. But Uranga failed to seek out the letter during discovery. This constitutes a failure to exercise due diligence and precludes relief. *See Jefferson*, 545 N.W.2d at 251; *Miles*, 490 N.W.2d at 799 (affirming denial of motion on ground defendant failed to exercise due diligence where it strained credulity to believe defendant did not know of evidence prior to trial); *Mays v. C. Mac Chambers Co.*, 490 N.W.2d 800, 805 (Iowa 1992) (holding plaintiffs were not entitled to new trial where plaintiffs were aware of witness prior to trial but did not attempt to contact witness until after trial); *Jones v. Scurr*, 316 N.W.2d 905, 910 (Iowa 1982) (stating "exculpatory evidence that was unavailable, but known, at the time of trial is not newly discovered evidence"); *Compiano*, 261 Iowa at 519, 154 N.W.2d at 851.

We also conclude Uranga failed to exercise due diligence because the December letter was in fact provided to the defense prior to trial. At the hearing on the motion for new trial, the prosecutor called an employee of the county attorney's office to testify. The employee testified the county attorney's office had an "open file" policy and provided discovery materials to attorneys with the public defender's office. The county attorney's office provided public defender attorneys with a laptop that allowed public defender attorneys to access the records the investigating agencies provided to the county attorney's office. An email from the county attorney's office showed Uranga's counsel, who was with the public defender's office, was given access to the electronic file on March 7, 2017, more than one year prior to trial in this case.

An employee of the sheriff's office testified the December letter was in the electronic file to which Uranga's counsel was granted access. The sheriff's office employee testified she was sure the document was in the electronic folder at the time the folder was provided to defense counsel:

> [N]ormally when the county attorney asks us to put something in for the sex offender registry, we take everything for that year and scan it in. And that [the December letter] was within my folders because I did just look at that folder, and it was attached to all the other items, so I'm sure that it was.

A screenshot of the contents of the electronic file show the December letter was in the file no later than April 26, 2018, which was prior to the time of Uranga's trial.[3]

There appears to be an explanation why the December letter was not introduced into evidence at trial. Uranga was a fugitive from justice from March 2, 2017, through March 20, 2018. The electronic file was made

---

[3]Nothing in this opinion stands for the proposition that the prosecutor had no duty to notify the defense of new discovery materials added to the discovery file after the initial disclosure.

available to Uranga's counsel on March 7, 2017. Uranga's counsel withdrew from the case at some point after accessing the electronic file but during the year in which Uranga was a fugitive from justice. After Uranga was arrested in March 2018, he was appointed new counsel, who represented Uranga through trial. It appears new trial counsel never requested any discovery from the county attorney's office and was unaware any discovery had been completed. During the instructions conference, Uranga's trial counsel argued the promise-of-leniency instruction should be given, in part, because "there was no discovery in this case." He stated that he first learned of the letters, including the December letter, from the witnesses during trial. Uranga's new trial counsel argued "without any discovery, this [was a] surprise to the defense." After the jury returned its verdict, Uranga was appointed a third attorney, who represented Uranga in posttrial motion practice. At the hearing on the motion for new trial, after hearing the State's witnesses testify the December letter was made available to Uranga's original counsel, Uranga's newest counsel stated this was "new information." She stated she did not know the December letter was in the discovery materials made available to prior counsel.

Trial counsel's failure to conduct discovery or review the discovery provided may explain why the evidence was not discovered prior to trial, but it is not grounds for a new trial based on newly discovered evidence. Counsel's failure to conduct discovery or review the discovery provided is a failure to exercise due diligence. Evidence made available to the defense prior to trial is not "newly discovered evidence" upon which relief can be granted. *See, e.g.*, *United States v. Pablo*, 571 F. App'x 724, 727 (10th Cir. 2014) (unpublished) (holding evidence was not newly discovered where the evidence was provided to the defense months before his trial); *United States v. Steele*, 72 F. App'x 478, 480 (7th Cir. 2003) (unpublished)

(holding evidence provided to defendant a week prior to trial was not newly discovered); *Baker v. State*, 755 P.2d 493, 501 (Kan. 1988) (holding evidence was not newly discovered where it was "certainly available on the first day of a three-day trial"); *State v. Atkins*, 928 N.W.2d 441, 448 (N.D. 2019) (holding evidence was not newly discovered where evidence was provided to defendant prior to trial but defendant admitted he "didn't really read the discovery"); *Walters v. State*, 403 P.2d 267, 277 (Okla. Crim. App. 1965) (stating "the defendant is precluded from taking advantage of the evidence he did not use and which the record shows was available to him at the trial on the merits"); *State v. Pinder*, 114 P.3d 551, 566 (Utah 2005) (reasoning that because evidence was available or known by the defendant before the conclusion of trial, the evidence cannot be considered "newly discovered" and "cannot justify the grant of a new trial"); *Byerly v. State*, 455 P.3d 232, 245–46 (Wyo. 2019) (stating evidence was not newly discovered where it was downloaded onto thumb drive and defense counsel was informed of this prior to trial).

III.

For these reasons, we conclude the district court did not abuse its broad discretion in denying Uranga's motion for new trial.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED.**