STATE of Iowa, Appellee,

v.

Alvin Ray JEFFERSON, Jr., Appellant.

No. 94–722.

Supreme Court of Iowa.

March 20, 1996.

Linda Del Gallo, State Appellate Defender, and Annette L. Hitchcock, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Susan M. Crawford, Assistant Attorney General, John P. Sarcone, County Attorney, and Daniel C. Voogt, Assistant County Attorney, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and ANDREASEN, JJ.

LARSON, Justice.

This is an appeal by Alvin Ray Jefferson, Jr. from his conviction of first-degree robbery under Iowa Code sections 711.1 and 711.2 (1993). He complains (1) that the court erred in refusing his motion for new trial based on newly discovered evidence, (2) that the evidence was insufficient to support the conviction, and (3) that the court denied him his right to effective cross-examination. We affirm.

About a half hour before the robbery, Anthony Riser came to the home of Ronzell Brown, the victim. After a brief conversation, Riser asked if anyone else was in the home. Brown said no. Later, two men wearing masks entered Brown's home and robbed him at gunpoint. When one of the robbers said "blast him," Brown dived through a glass window and escaped. Brown identified the two men as Riser and the defendant.

Riser pled guilty in juvenile court to second-degree theft and first-degree robbery. Jefferson's case went to trial. At the trial, Riser admitted his own participation in the crime but testified that the defendant was not involved. He testified that a "Che," whose last name and address were unknown to him, was his accomplice.

The defendant testified on his own behalf that he was not involved in the robbery but he, too, knew a "Che." He stated that he did not know Che's address or his last name. Che did not appear at the trial, nor was there any apparent effort at that time by the State or the defendant to find him.

A sheriff's deputy, who had heard the testimony regarding Che, remembered having dealt with someone with that unusual first name. The deputy discovered that there was a booking record for a man named "Che Moore," who lived close to the crime scene. By the time the deputy discovered the information, the jury was already deliberating. This information was nevertheless conveyed to the defendant's lawyer. The lawyer did not raise the issue at that time by moving to reopen the evidence. After the unfavorable verdict, however, he raised the issue in a motion for new trial. The motion was denied.

## I. The Newly Discovered Evidence.

A district court is given "unusually broad discretion" in ruling on a motion for a new trial based on newly discovered evidence. *State v. Miles*, 490 N.W.2d 798, 799 (Iowa 1992).

This broad discretion is particularly appropriate. It is important to distinguish between the unavoidable, legitimate claims and those proposed in desperation by a disappointed litigant. From its closer vantage point, the presiding trial court has a clearer view of this crucial question, and we generally yield to its determination.

*Id.*

In order to prevail on such a motion, the defendant must show that the evidence (1) was discovered *after* the verdict, (2) could not have been discovered earlier in the exercise of due diligence, (3) is material to the issues in the case and not merely cumulative, and (4) probably would have changed the result of the trial. *Id.* (citing *Jones v. State*, 479 N.W.2d 265, 274 (Iowa 1991)).

Here, the defendant fails on both of the first two grounds. First, the evidence was not discovered after the verdict. It was discovered prior to the verdict, and his proper remedy was to seek an order of the court to reopen the evidence. This would avoid the necessity of a whole new trial, it would allow

immediate correction of any deficiency in the record, and it would prevent the defendant from gambling on a defense verdict while holding back his grounds for a new trial in case the jury returned a verdict of guilty.

Although there appears to be no Iowa cases directly on the question of whether the record may be reopened after submission to the jury, there is substantial authority supporting the court's authority to do so.

> Under this rule the trial court has the power to recall the jury after it has retired to consider its verdict, and to reopen the case and receive evidence which is of vital importance to the accused. So long as the defendant has an opportunity to offer evidence in rebuttal, the court has discretion to reopen a case for additional testimony up until the jury returns.

75 Am.Jur.2d *Trial* § 392, at 588 (1991); *see generally* Annotation, *Propriety of Reopening Criminal Case in Order to Present Omitted or Overlooked Evidence, After Submission to Jury But Before Return of Verdict,* 87 A.L.R.2d 849 (1963).

One problem with reopening the case after submission to the jury is said to be that it might unduly emphasize the newly presented evidence. *Eason v. United States,* 281 F.2d 818, 822 (9th Cir.1960). That, of course, would have worked to the defendant's advantage here. Nevertheless, he made no effort to reopen the evidence or otherwise bring this matter to the court's attention before the verdict.

The defendant seeks to justify his failure to move to reopen the evidence on the ground that no Iowa cases specifically sanction such procedure. However, in *State v. Teeters,* 487 N.W.2d 346 (Iowa 1992), an analogous case concerning a motion to reopen the evidence prior to closing arguments, we implied that this procedure would be recognized. We noted the factors that a court should consider in ruling on an application to reopen the record: (1) the reason for the failure to introduce the evidence, (2) the surprise or unfair prejudice that might result by introducing the evidence, (3) the diligence used by the proponent to secure the evidence, (4) the admissibility and materiality of the evidence, (5) *the stage of the trial when the motion is made,* (6) the time and effort expended in the trial, and (7) the inconvenience that reopening the evidence would cause to the proceedings. *Id.* at 348 (citing 75 Am.Jur.2d *Trial* § 382, at 579 (1991)).

■ Thus, the stage of the proceeding when the motion is made is only one of the factors to be considered. We believe that a court has the discretion to reopen the record after submission to the jury if the other criteria are met. We note here, again, that a proponent must show that he used due diligence to secure the evidence "in a timely fashion." *Teeters,* 487 N.W.2d at 348. That raises the next issue.

In addition to the fact that the defendant chose the wrong remedy, he has failed to show that he exercised due diligence in seeking the evidence in question. Borrowing language from *Miles,* "it stretches credulity" to believe that neither this defendant nor Riser knew about Che before the deputy "discovered" his identity and address. Both the defendant and Riser testified that they knew a Che. The defendant knew where he lived, although he did not know his street address. Riser stated that Che had been with him on prior occasions, but

> I guess he [Che] doesn't want me to know where he lives, so I dropped him off at the same spot, you know, by the bushes and stuff, and he went there and got [the gun] and came back out.

This colloquy took place during the cross-examination of the defendant:

> Q And when your lawyer asked you if he [Che] was a friend, you said he was an associate; is that right? A. Of mine?
>
> Q. Well, is he a friend of yours? A. *A good friend of mine.*
>
> Q. And you said he was an associate of Anthony Riser [the admitted perpetrator]? A. Yes. I said if he's a friend of mine, he's a friend of Anthony's. That's what I said.

(Emphasis added.)

The colloquy also included this exchange:

Q. Is [Che][1] this person's real name or a street name? A. That's his real name.

Q. What's his full name? A. [Che].

Q. Just [Che]? A. Yea. His name was [Che].

Q. Is that his first name or last name? A. That's his first name.

Q. What's his last name? A. I don't know.

Q. I'm talking about [Che], the good friend of yours? A. Yea, the good friend of mine.

Q. What's his last name? A. I don't know.

Q. What's his address? A. I don't know his address, but I know his address where his house is. You don't usually remember your friends' addresses—at least I don't. I don't even know my girlfriend's address.

We believe that not only did the defendant fail to exercise diligence in trying to obtain this evidence, he actually knew about a Che and could have brought this evidence forward in a timely fashion.

The standard for finding an abuse of discretion under these circumstances is that "such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Teeters*, 487 N.W.2d at 349 (quoting *State v. Morrison*, 323 N.W.2d 254, 256 (Iowa 1982)). We conclude that the defendant failed to establish an abuse of discretion here.

## II. *The Sufficiency of the Evidence.*

■ The defendant also complains that the evidence was insufficient to convict him, primarily with respect to identification. We disagree.

The car that was seen by several witnesses speeding away from the robbery scene was unique: it was red, had no license plate on the rear, and had chrome missing off of one side. A car matching that description was found later at the home of the defendant's mother.

Moreover, Brown had known the defendant and Riser for some time, and his identi-

fication of them should be given considerable weight. Brown testified that he recognized the defendant, despite the fact that he had a stocking cap pulled over his face. He testified that this was partly because of the defendant's size and "shape," but

it's not just the shape and the size of his body. It's just through that stocking cap that he got on, I know who he was by the way that he was speaking, the way that he talked, the way that he looked, the way that he's shaped. Somebody that you know a stocking cap doesn't hide—at least it doesn't hide from me knowing who he was.

We believe that there was sufficient evidence to convict the defendant and that the trial court did not abuse its discretion in denying his motion on this ground.

## III. *The Cross-Examination.*

■ The defendant also complains that the court erred in failing to allow him adequate latitude in cross-examining the victim on the basis of collateral matters primarily concerning the fact that the victim was a drug dealer and had made false statements in an application for court-appointed counsel. We believe the court's ruling in this respect was well within its discretion.

We affirm the decision of the court of appeals and the judgment of the district court.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

---

1. The transcript spells Che phonetically, at times, as "Shay."