# IN THE COURT OF APPEALS OF IOWA

No. 20-0389
Filed June 30, 2021


**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DENNIS CARROLL GLENN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Guthrie County, Thomas P. Murphy, Judge.

Dennis Glenn challenges the sufficiency of the evidence to support his convictions for possession of marijuana and possession of methamphetamine. He also requests a new trial on the basis of newly discovered evidence. **AFFIRMED.**


Nathan A. Olson of Branstad & Olson Law Office, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.


Considered by May, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

Dennis Glenn challenges the sufficiency of the evidence on his convictions for possession of marijuana and possession of methamphetamine. He claims the State did not prove he *knowingly* possessed marijuana or methamphetamine and did not prove he possessed methamphetamine, arguing possession of methamphetamine residue is not enough to support his conviction. In addition, Glenn claims the district court erred in denying his request for a new trial, pointing to newly discovered evidence.

**I. Facts and Earlier Proceedings.**

This case started as a routine traffic stop in August 2019. Deputy Sheriff Jeremy Bennett initiated the stop and approached the vehicle. He observed a female in the driver's seat, Desiray Elliott, and Glenn in the front passenger seat. Deputy Bennett spoke with Elliott and believed she was under the influence; he also found the vehicle had incorrect license plates. In the course of investigating and speaking with the Elliott, he noticed a backpack between Glenn's feet on the front passenger side of the vehicle. Deputy Bennett requested backup.

Soon after, Deputy Kent Gries responded to assist. He spoke with Elliott as she sat in Deputy Bennett's patrol vehicle; he thought she appeared impaired. Deputy Gries told Glenn he was going to search the car, to which Glenn responded: "Just the car right?" Glenn clarified he had a "personal backpack in there." When Deputy Gries asked what was in the backpack, Glenn replied "my own personal stuff" and told Deputy Gries he did not have permission to search the backpack. Once Deputy Gries removed the backpack from the floor of the front

passenger seat, he found Glenn's cell phone and a cigarette box containing cash. Glenn later confirmed both were his. After placing the backpack on the hood of the car, Deputy Gries searched the car's passenger compartment and found nothing illegal. He searched the backpack next; he found a plastic container and plastic bag, both containing what appeared to be marijuana,[1] and two glass pipes in the front zipper pocket. The pipes appeared to contain methamphetamine residue.[2] Elliott then told Deputy Gries the pipes and marijuana belonged to her and Glenn; they had bought the marijuana together and planned to sell it for ten dollars.

Glenn and Elliott were arrested and transported to the law enforcement center. During the booking process, Glenn asked Deputy Gries to retrieve his "other pair of glasses out of my bag." He also mentioned a letter addressed to the social security office in the backpack and asked Deputy Gries if he would mail it for him, stating "it's already stamped and everything." Glenn was allowed to access the backpack and he produced the letter. He also searched for his cell phone. Glenn then asked if his cousin could come get the bag after the inventory process: "Once you're through all that shit, can I have, I want my cousin to come get it." Glenn then admitted to officers at the center, "I had residue in two glass

---

[1] Testing performed by Trooper Marty McCreedy of the Iowa State Patrol confirmed the substances in the container and bag were marijuana. He also tested residue from a marijuana pipe found in the backpack; and it tested positive for trace amounts of marijuana.

[2] One of the pipes was sent to the Iowa Division of Criminal Investigation, and residue tested positive for methamphetamine.

dicks.[3]  I haven't had my meds so I got some pot to help ease my pain."  Deputy Gries searched the backpack again and confirmed it contained two methamphetamine pipes with residue, a newly found marijuana pipe with residue, a prescription bottle with Glenn's name, and mail addressed to Glenn.

Glenn was charged with possession of methamphetamine and possession of marijuana (third or subsequent offense on both charges).  *See* Iowa Code § 124.401(5) (2019).  He was also charged with violating Iowa Code section 124.402(1)(e).[4]  The jury trial began in December 2019; on December 4, Glenn was found guilty on both possession charges and acquitted on the third charge.  On December 15, after the trial was completed, but before Glenn was sentenced, Elliott sent a notarized letter to the county attorney claiming the drugs and the three pipes belonged to her.  In January 2020, Glenn timely moved for a new trial on the basis the letter was newly discovered evidence.  The district court denied Glenn's motion during a hearing in February.  He was sentenced to concurrent terms not to exceed fifteen years imprisonment.[5]  Glenn now appeals.

---

[3] Deputy Gries testified at trial that "glass dick" is a term used by methamphetamine users to describe glass methamphetamine pipes.

[4] Iowa Code section 124.402(1)(e) provides that it is unlawful for any person to

[k]nowingly to keep or permit the keeping or to maintain any premises, store, shop, warehouse, dwelling, temporary, or permanent building, vehicle, boat, aircraft, or other temporary or permanent structure or place, which is resorted to by persons using controlled substances in violation of this chapter for the purpose of using these substances, or which is used for keeping, possessing or selling them in violation of this chapter.

[5] Glenn's sentence was enhanced because of his status as an habitual offender.

**II. Standard of Review and Error Preservation.**

Glenn first claims there was insufficient evidence to convict him on the possession charges. "We review challenges to the sufficiency of [the] evidence for correction of errors at law." *State v. Albright*, 925 N.W.2d 144, 150 (Iowa 2019). The State concedes Glenn preserved error on his sufficiency-of-the-evidence claims by twice moving for a directed verdict, which was treated as a motion for judgment of acquittal at trial. *See State v. Adney*, 639 N.W.2d 246, 249 (Iowa Ct. App. 2001). Next, Glenn claims the district court erred in denying his motion for new trial. "[W]e review the trial court's ruling on a motion for new trial on the basis of newly-discovered evidence for an abuse of discretion." *State v. Romeo*, 542 N.W.2d 543, 551 (Iowa 1996). The States concedes he preserved error by timely filing a motion requesting a new trial.

As to Glenn's other appellate issue, we find he did not preserve error on his newly crafted argument that possession of methamphetamine residue cannot support a conviction under Iowa Code section 124.401(5). Glenn raises this specific argument for the first time on appeal. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Thus, we do not address that claim.

**III. Analysis.**

**A. Sufficiency of the Evidence.**

We first address Glenn's sufficiency-of-the-evidence claim. "In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts

consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *State v. Reed*, 875 N.W.2d 693, 704 (Iowa 2016) (citation omitted). "A jury verdict finding of guilt will not be disturbed if there is substantial evidence to support the finding." *State v. Robinson*, 859 N.W.2d 464, 467 (Iowa 2015). Evidence is substantial if it would "convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt." *Id.* (citation omitted).

The State's case was based on a theory of constructive possession because the drugs and paraphernalia were not found on Glenn's person. "Constructive possession exists when the evidence shows the defendant has knowledge of the presence of the controlled substance and has the authority or right to maintain control of it." *Reed*, 875 N.W.2d at 706 (quoting *State v. Maxwell*, 743 N.W.2d 185, 193 (Iowa 2008)). Elliott claimed and proved ownership of the car to the officers at the stop. Still, Glenn had access to the vehicle as a passenger. We do not recognize an inference creating a rebuttable presumption of possession involving vehicles when it has been established that multiple individuals had equal access to the vehicle. *See State v. Kemp*, 688 N.W.2d 785, 788 (Iowa 2004). "However, a determination of constructive possession still requires we draw some inferences based on the facts of the case." *State v. Dewitt*, 811 N.W.2d 460, 475 (Iowa 2012). We consider:

> (1) incriminating statements made by the person; (2) incriminating actions of the person upon the police's discovery of a controlled substance among or near the person's personal belongings; (3) the person's fingerprints on the packages containing the controlled substance; and (4) any other circumstances linking the person to the controlled substance.

*Maxwell*, 743 N.W.2d at 194.

> Additionally, in a motor-vehicle case, a court may also consider these factors: (1) was the contraband in plain view, (2) was it with the defendant's personal effects, (3) was it found on the same side of the car seat or next to the defendant, (4) was the defendant the owner of the vehicle, and (5) was there suspicious activity by the defendant.

*Kemp*, 688 N.W.2d at 789.

All of the factors listed serve as a guide in determining whether constructive possession has been established. *Id.* "Even if some of these facts are present, we are still required to determine whether all of the facts and circumstances . . . allow a reasonable inference that the defendant knew of the drug's presence and had control and dominion over the contraband." S*tate v. Cashen*, 666 N.W.2d 566, 571 (Iowa 2003). Lastly, a defendant's mere proximity to contraband cannot support a finding of constructive possession. *Reed*, 875 N.W.2d at 693.

Glenn claims the State presented insufficient evidence to prove he knew the drugs and paraphernalia were in the backpack. We disagree. Glenn made numerous incriminating statements regarding his possession of the backpack and his knowledge of its contents. He told officers during the stop that his "personal backpack" was in the car, containing "personal items."[6] Glenn specifically asked that the officers not search the backpack, which suggested he had some control over it. At the law enforcement center, a video camera recorded Glenn asking Deputy Gries to retrieve his "other pair of glasses out of my bag." He asked Deputy Gries to mail a personal letter from the backpack for him. Glenn searched the

---

[6] These statements are contained in body camera footage from Deputy Gries that was admitted at trial.

backpack himself for the letter and his cellphone, indicating he knew what was in the bag and where items were located. Glenn asked if his cousin could come get the bag after the inventory process, again indicating the bag was his. Even more, Glenn admitted, "I had residue in two glass dicks. I haven't had my meds so I got some pot to help ease my pain." Deputy Gries found the drugs and paraphernalia in the backpack with Glenn's personal effects; namely a prescription bottle with Glenn's name and mail addressed to Glenn. All of the above supports the jury's finding that Glenn owned and had possession of the backpack and knew it contained marijuana and paraphernalia with methamphetamine residue.

Glenn references omissions in Deputy Gries's reports to attack the credibility of the deputy's trial testimony. Starting with the property inventory sheet authored by Deputy Gries, Glenn argues it was missing a list of Glenn's personal effects. He postures, "With a wrong or incomplete inventory list, it is impossible to know: if the deputy's memory is incorrect about [my] property, if Elliott's property was in the bag, or exculpatory evidence was in the bag." Additionally, Glenn argues the inclusion of Elliott's admission that she and Glenn possessed the drugs and paraphernalia and the omission of Glenn's incriminating statements in Deputy Gries's report and the criminal complaint weakens the conclusion Glenn knowingly possessed the drugs.

Most of Glenn's arguments about the inconsistencies in the evidence attack the credibility of Deputy Gries. Despite any omissions or deficiencies in Deputy Gries's inventory list and report, the jury was able to evaluate his credibility based on his trial testimony. *See State v. Dudley*, 856 N.W.2d 668, 676 (Iowa 2014)

("Our system of justice vests the jury with the function of evaluating a witness's credibility."). Likewise, the jury heard Glenn's incriminating statements during the stop and the booking process, further bolstered by the presence of the drugs and paraphernalia among his personal effects in the backpack. Viewing the evidence in the light most favorable to the State, we conclude there was substantial evidence that Glenn knowingly possessed marijuana and methamphetamine.

**B. Motion for New Trial.**

Elliott sent a handwritten and notarized letter to the county attorney dated two weeks after the jury convicted Glenn. In the letter, Elliott took "full ownership" of the marijuana, marijuana pipe, and two methamphetamine pipes found in Glenn's backpack. As the State noted, Elliott "conveniently had her charges wrapped up the week before this letter came . . . when those charges were wrapped up, they did not include possession of marijuana or possession of meth." In the hearing on the motion for new trial addressing the letter as newly discovered evidence, the district court confirmed, "Well, this court on the record took a plea and sentenced the author of the affidavit, Ms. Elliott, on December 2 [2019]. A disposition order was not entered until December 4, which was the second day of Mr. Glenn's trial." Pointing to the admissions, Glenn claims the district court erred in denying his motion for a new trial. He argued in his motion, and now on appeal, that newly discovered evidence warranted a new trial. The State resisted the motion for new trial, but on appeal, it does not address this claim in its briefing.

Iowa Rule of Criminal Procedure 2.24(2)(b)(8) states a new trial may be granted "[w]hen the defendant has discovered important and material evidence in

the defendant's favor since the verdict, which the defendant could not with reasonable diligence have discovered and produced at the trial." Specifically, granting a motion for new trial based on newly discovered evidence is appropriate only if the evidence "(1) was discovered *after* the verdict, (2) could not have been discovered earlier in the exercise of due diligence, (3) is material to the issues in the case and not merely cumulative, and (4) probably would have changed the result of the trial." *State v. Smith*, 573 N.W.2d 14, 21 (Iowa 1997) (quoting *State v. Jefferson*, 545 N.W.2d 248, 249 (Iowa 1996)). District courts have "'[u]nusually broad discretion' when 'ruling on a motion for new trial on the basis of newly discovered evidence.'" *State v. Uranga*, 950 N.W.2d 239, 243 (Iowa 2020) (alteration in original) (quoting *State v. Miles*, 490 N.W.2d 798, 799 (Iowa 1992)). "[W]e have made it clear that the court should closely scrutinize them and grant them sparingly." *State v. Carter*, 480 N.W.2d 850, 852 (Iowa 1992) (citation omitted).

Glenn claims he was unaware of the letter, and so the evidence was not available at trial. Yet, the letter offers little detail about what Glenn knew or did not know about Elliott's claim the drugs were hers. Glenn's arguments to the jury insinuated that Elliott was under the influence—not Glenn—and that the State was wrongly fixated on Glenn, not Elliott. He pointed to Elliott as the owner of the car and that the backpack was accessible to her as were the other personal items in the vehicle. Thus, we find Glenn failed to carry his burden as to items (1), (2) and (4). If Glenn realized Elliott was a potential suspect, as was suggested at trial, he then had to show due diligence to investigate and produce such evidence. *See*

*State v. Compiano*, 154 N.W.2d 845, 850-51 (Iowa 1967) (noting the applicant must exhaust the probable sources of information, use that of which he knows, and follow all clues that might be discovered or developed). Glenn had suspicion of Elliott's claimed possession yet failed to use due diligence to produce the theory and evidence, or ask for a continuance to develop the theory. *See id.* at 850 (finding the exercise of due diligence may require requesting a continuance of the trial).

Even so, on the fourth prong of the test, we cannot say this evidence "probably would have changed the result of the trial." *Smith*, 573 N.W.2d at 21. If Elliott testified at Glenn's trial that the drugs were hers, the State would have had an opportunity to attack her potential motives and undermine her credibility with the jury on cross-examination. Even more, the State presented strong evidence that Glenn knowingly possessed the drugs based on his recorded incriminating statements, behavior, and the presence of his personal effects in the backpack where the drugs were found. Put another way, even if Elliott's admissions were available at trial, the jury still could find Glenn guilty based solely on the evidence presented at trial. *See Moon v. State*, 911 N.W.2d 137, 151 (Iowa 2018). In the denial of the motion for new trial, the district court summarized the reasoning:

> I observed a fair and impartial trial. I cannot say that had Ms. Elliott appeared and testified in this matter and then been subject to cross-examination that the alleged new evidence would probably have led to a different result upon retrial. And so the motion for a new trial is denied.

We agree. Trial courts are "generally in a better position than we to determine whether evidence, newly discovered, would probably lead to a different verdict upon retrial." *Compiano*, 154 N.W.2d at 849

We find the district court did not abuse its discretion in denying Glenn's motion for new trial based on Elliott's letter.

## IV. Conclusion.

We affirm Glenn's convictions for possession of marijuana and possession of methamphetamine, as the verdicts were supported by substantial evidence. We also find the newly presented evidence does not justify granting Glenn's request for a new trial.

**AFFIRMED.**