# IN THE COURT OF APPEALS OF IOWA

No. 20-1456
Filed November 2, 2022

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**EMMANUEL E. SPANN,**
        Defendant-Appellant.
_____


Appeal from the Iowa District Court for Des Moines County, Michael J. Schilling, Judge.


Defendant appeals his conviction for first-degree murder based on a theory of aiding and abetting.  **AFFIRMED.**


Kent A. Simmons, Bettendorf, for appellant.

Thomas J. Miller, Attorney General, and Benjamin Parrott, Assistant Attorney General, for appellee.


Considered by Bower, C.J., Tabor, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**CARR, Senior Judge.**

Emmanuel Spann appeals his conviction for first-degree murder based on a theory of aiding and abetting. Spann claims the district court erred in admitting certain evidence, his conviction was not supported by substantial evidence, and the court should have granted his motion for new trial. After considering all of the issues raised by Spann in this appeal, we affirm his conviction.

## I.     Background Facts & Proceedings

The jury could find the following facts from evidence presented at Spann's trial. In 2017, A.J. Smith offered $10,000 for someone to kill Demarcus Chew.[1] Spann and his friend, Andre Harris, drove to Burlington, Iowa, from Chicago, Illinois, on September 8, 2017. Harris testified he went to Burlington to purchase drugs from Antoine Spann, who is Spann's nephew. For purposes of clarity, we will refer to Antoine Spann as Antoine. Harris stated Spann came along on the drive to Burlington just "to hang out."

Spann and Harris met up with Antoine, Derrick Parker, and Caesar Davison, who were already in Burlington. The men all grew up in the same neighborhood in Chicago as Smith. All of the men, including Spann, knew about the bounty on Chew and would "spout off" about it, saying, "I'll do it."

On September 9, Spann, Harris, Antoine, Parker, and Davison were at a nightclub in Gulfport, Illinois, when they noticed Chew was at the same location. The men kept an eye on Chew. According to Antoine, although there was not a specific conversation, he agreed that "[a]t some point . . . there [was] an

---

[1] Previously, Chew's brother, Timothy Chew, was charged with non-fatally shooting Smith. Smith died in 2018, before the trial in this case.

understanding that was come to about actions to be taken against Demarcus Chew." Antoine also stated, "I mean, you could say that I kinda figured what was going on, but I didn't really think it was going to happen."

When Chew left the nightclub in the morning on September 10, the men followed Chew in two vehicles. Antoine was driving one of the vehicles, Harris was in the front passenger seat, and Davison and Spann were in the backseat. Chew drove to Burlington. While the first vehicle followed Chew, Antoine stated Spann and Davison told him to go a different direction. He stopped where they told him, which was near Chew's home. Davison got out of the vehicle, and Spann followed. According to Harris, they were gone for about two minutes and he did not hear anything unusual. Antoine testified that about five seconds after Spann got out of the vehicle, he heard three or four shots.

Antoine stated that when Davison and Spann returned to the vehicle, he drove off quickly. Harris saw Davison give a gun to Spann. Antoine saw Spann wiping something off. Harris later testified, "I'm not sure who said what, but it was asked, did you get him, and [Davison] responded, I was close up." Antoine explained, "Once we got going, I think I heard [Davison] say his ass gone." At some point, Antoine stopped the vehicle. Spann got out to "get rid of the gun," then returned to the vehicle.

Antoine stated Spann used Antoine's phone to call Smith. All of the men met up again at a house in Burlington. Parker took Davison's sweater and threw it in the garbage in the alley behind the house. Antoine called Smith, who told him to come to Smith's house in Illinois. Antoine stated that instead of $10,000, which

they expected to receive for the death of Chew, Smith gave him $1000 and a pound of methamphetamine.

Harris went back to Chicago after a fairly short time. Spann and Davison left in a different vehicle at about the same time. Antoine also returned to Chicago and gave the money and methamphetamine to Davison. Spann was with Davison when Davison received the cash and drugs.

Chew died as a result of multiple gunshot wounds. A witness saw a tall person leaving the scene. Spann is six feet, two inches tall. Spann later told Antoine that he observed the shooting of Chew.

After Antoine was charged with first-degree murder, he entered into plea negotiations with the State. Antoine agreed to make a telephone call to Spann that was recorded by a police officer. During the call, Spann stated that he wiped off the gun and stashed it in an alley near a white picket fence. Antoine expressed concern that Parker might have seen Spann get out of the vehicle and tell officers about it, and Spann responded, "Yeah." Officers were able to find the gun in a location similar to that described by Spann. Ballistics tests show the gun was used to kill Chew.

On March 7, 2019, Spann was charged with murder in the first degree, in violation of Iowa Code section 707.2(1)(a) (2017), under a theory of aiding and abetting, section 703.1. He was also charged with conspiracy to commit a forcible felony, in violation of sections 706.1 and 706.3(1). Spann's jury trial was held in January and February 2020. Harris and Antoine had entered into plea agreements that required them to give truthful testimony against others involved in the incident,

and they testified for the State in Spann's trial. The case was submitted to the jury on February 7 at about 12:40 p.m.

Earlier on February 7, at 8:56 a.m., Antoine made a call from a correctional facility, where he stated, "I ain't testifying against [Davison], bro. I ain't saying shit on [Davison], bro. Imma get up there and tell them people I lied, I made all this shit up, bro." Davison's trial was to start the following week, and Harris and Antoine were expected to testify against him. Antoine also stated, "Emmanuel didn't do nothin', he just got out of the car." Antoine stated Parker planned and carried out the murder of Chew. Antoine was aware the call was being recorded, stating, "And it's on the record right now. I'm on the phone with you. So it's on the record. I lied."

The State did not disclose Antoine's telephone call to defense counsel until 4:30 p.m. on February 10, after the jury found Spann guilty of first-degree murder and conspiracy to commit a forcible felony.

Spann filed a motion for new trial and motion in arrest of judgment. He claimed he should be granted a new trial because the State failed to disclose important and material evidence, the State's failure violated his right to due process, the verdict was contrary to the law or evidence, the verdict was not supported by substantial evidence, and he was denied his right to a fair and impartial trial.

The State resisted Spann's motions. The prosecutor asserted that counsel for Davison advised her on Friday afternoon, February 7, that Antoine may have made a telephone call. The prosecutor stated she obtained a recording of the telephone call on Monday, February 10, and forwarded it to defense counsel. The

State asserted that Antoine's testimony at Davison's trial was substantially the same as it was in Spann's trial. Spann replied, pointing out the State gave counsel for Davison a recording of the telephone call at 8:51 a.m. on February 10 but did not give counsel for Spann a recording of the call until 4:30 p.m., after the jury had returned its verdict.

The district court issued an order on October 14, denying Spann's motions. The court determined there was substantial evidence in the record to show Spann aided and abetted in the murder of Chew and conspired to commit murder. The court also found the jury's verdict was not contrary to the weight of the evidence. The court found the State's failure to timely give defense counsel a recording of Antoine's telephone call was not a violation under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), because the evidence was not material, meaning the evidence did not undermine confidence in the verdict. Additionally, considering the telephone call as newly discovered evidence, the court found that presenting the evidence to the jury would not probably change the result of the trial, so a new trial was not warranted. The court stated Antoine "was attempting to avoid being labeled a snitch." The court concluded Spann received a fair and impartial trial.

Spann was sentenced to life in prison on his conviction for first-degree murder. The district court merged the conviction for conspiracy to commit murder into the conviction for murder. Spann appeals his conviction.

## II.    Evidentiary Rulings

Spann challenges two of the district court's evidentiary rulings. He claims the evidence should be excluded under Iowa Rule of Evidence 5.403, because the

probative value of the evidence was outweighed by the danger of unfair prejudice.

The Iowa Supreme Court has stated:

> Whether evidence should be excluded under rule 5.403 is a two-part test: "First, we consider the probative value of the evidence. Second, we balance the probative value against the danger of its prejudicial or wrongful effect upon the triers of fact." "The relevant inquiry is not whether the evidence is prejudicial or inherently prejudicial but whether the evidence is unfairly prejudicial." Unfair prejudice means the "evidence has an undue tendency to suggest a decision on an improper basis." Our review of evidentiary decisions under rule 5.403 is for an abuse of discretion. "Weighing probative value against prejudicial effect 'is not an exact science,' so 'we give a great deal of leeway to the trial judge who must make this judgment call.'"

*State v. Lacey*, 968 N.W.2d 792, 807 (Iowa 2021) (internal citations omitted).

**A.** Prior to trial, Spann filed a motion in limine seeking to exclude body camera footage from police officers that showed paramedics performing CPR on Chew in the area where he was shot outside his home. The district court ruled the video could be shown without audio. The State sought to introduce the video during the trial testimony of Officer Blake Cameron of the Burlington Police Department. Spann again objected on the ground the video was unfairly prejudicial. Outside the presence of the jury, Officer Cameron testified the body camera footage did not contain anything that had not already been testified to.

The court overruled Spann's objection. The court stated,

> [O]nce the audio portion is extracted and redacted, . . . in the court's judgment, there's very little prejudicial effect, if any, to showing this video, which is about two to two and a half minutes long. Because it's dark outside, it's difficult to see much. You can see the paramedics cutting the shirt and the clothes off of Mr. Chew. Under the court's judgment showing this to the jury is—it's relevant and it's not unfairly prejudicial to Mr. Spann, so long as the audio portion is not shown.

The jury returned, and the court informed them "only the sight not the sound portion of this exhibit [would] be shown."

Spann contends the district court abused its discretion by permitting the jury to view the body camera video. The video was relevant to show paramedics attempted to save Chew's life but he died. Furthermore, the video was not unfairly prejudicial. "Prejudice occurs when evidence prompts a jury to make a decision on an improper basis." *State v. Buman*, 955 N.W.2d 215, 221 (Iowa 2021). Spann was charged with murder, and it was not prejudicial to show Chew had died. "Generally, we defer to the district court's balancing of probative value against the prejudicial effect of evidence under rule 5.403. This balancing 'is not an exact science,' and 'we give a great deal of leeway to the trial judge who must make this judgment call.'" *State v. Brown*, No. 20-1098, 2022 WL 468960, at *6 (Iowa Ct. App. Feb. 16, 2022) (internal citation omitted) (quoting *State v. Thompson*, 954 N.W.2d 402, 408 (Iowa 2021)). We conclude the district court did not abuse its discretion.

**B.** In a motion in limine, Spann sought to prevent the State's witness Anastasia Ross from testifying that she and Chew were the parents of children. The court ruled Ross could "testify that she knows [Chew] by virtue of being the mother of his children without mentioning the ages or names of those children." The court stated, "In conducting the balancing test required by the Rules of Evidence, the [c]ourt concludes that any prejudice, if any, associated with allowing that limited testimony does not outweigh or exceed the probative value of the evidence."

During the trial, Ross testified she knew Chew because she was "the mother of his children." She identified a photograph of Chew, stating, "It's my kids' father." Ross testified Chew's nickname was "Peanut." She also testified about the bad blood between Smith and the Chew family.

Spann claims the court should have determined Ross's testimony about her children with Chew was inadmissible under rule 5.403. He states the evidence was not relevant and it was unduly prejudicial because it raised sympathy for Chew. Ross's testimony that she was the mother of Chew's children was relevant to show how she was able to identify the photograph of Chew, knew his nickname, and knew of the bad blood between Smith and Chew. The evidence was not unfairly prejudicial because she only briefly mentioned the children and did not give their names or ages. *Cf. State v. Rutledge*, 113 N.W. 461, 464 (Iowa 1907) (finding a court erroneously permitted a widow to testify to the number and age of her children—and this error coupled with many others denied Rutledge a fair trial). We conclude the court did not abuse its discretion in permitting the limited evidence that Chew and Ross were the parents of children.

On appeal, Spann claims the court did not state on the record its analysis of the probative value of the evidence. He also claims the prejudicial effect of the two evidentiary rulings should be combined. Spann did not raise these issues before the district court, and we determine they have not been preserved for our review. *See State v. Montgomery*, 966 N.W.2d 641, 650 (Iowa 2021) ("Generally, error is preserved on an issue if (1) a party raises the issue before the district court, (2) the district court rules upon the issue, and (3) the party again raises the issue on appeal." (citation omitted)).

### III.    Sufficiency of the Evidence

"Challenges to the sufficiency of the evidence are reviewed for correction of errors at law."  *State v. Hansen*, 750 N.W.2d 111, 112 (Iowa 2008).  "[W]e are highly deferential to the jury's verdict.  The jury's verdict binds this court if the verdict is supported by substantial evidence."  *State v. Cahill*, 972 N.W.2d 19, 27 (Iowa 2022) (citation omitted).  "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Mathis*, 971 N.W.2d 514, 516–17 (Iowa 2022).

In section 703.1, the legislature provided:

> All persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aid and abet its commission, shall be charged, tried and punished as principals.  The guilt of a person who aids and abets the commission of a crime must be determined upon the facts which show the part the person had in it, and does not depend upon the degree of another person's guilt.

The Iowa Supreme Court has stated:

> [I]n order to support an aiding and abetting theory, the record must contain substantial evidence that the accused assented to or lent countenance and approval to the criminal act "either by active participation or by some manner encouraging it prior to or at the time of its commission."  We observed, "Knowledge is essential; however, neither knowledge nor presence at the scene of the crime is sufficient to prove aiding and abetting."

*State v. Huser*, 894 N.W.2d 472, 490–91 (Iowa 2017) (internal citations omitted). "[A] fact finder may infer a defendant's participation from all of the surrounding circumstances of the illegal activity, including evidence of presence, companionship, and conduct before and after the offense is committed."  *Id.* at 491.

**A.** Spann contends there is insufficient evidence in the record to show he aided and abetted in the murder of Chew. The evidence presented by the State showed Spann grew up with Davison, Harris, Parker, and Antoine, who is his relative. All five men spent the evening of the murder at the club in Illinois. All five men knew about the bounty their friend Smith had placed on Chew, and they had discussed it among themselves. All of the men, including Spann, knew about the bounty on Chew and would "spout off" about it, saying, "I'll do it." The whole group knew Chew was at the club that night. Video surveillance showed the men acting in concert to keep an eye on Chew. Antoine testified that although there was not a specific conversation, he agreed that "[a]t some point . . . there [was] an understanding that was come to about actions to be taken against Demarcus Chew."

When Chew left the nightclub, the five men followed Chew in two vehicles. While the first vehicle followed Chew, Antoine stated Spann and Davison told him to go a different direction. He stopped where they told him to stop the vehicle. Antoine stated he did not know the location where he stopped the vehicle but where Spann and Davison told him to stop turned out to be near Chew's home. Davison exited the vehicle, and Spann quickly followed. Antoine testified that after Spann got out of the vehicle, he heard three or four shots. Chew was shot to death near his home. Antoine testified Spann told him that he saw the shooting happen.

When Davison and Spann returned to the vehicle, Antoine drove off quickly. Davison handed a gun to Spann, which Spann wiped off. Harris testified, "I'm not sure who said what, but it was asked, did you get him, and [Davison] responded, I was close up." Antoine testified, "Once we got going, I think I heard [Davison] say

his ass gone." At some point, Antoine stopped the vehicle. Spann got out to "get rid of the gun," then returned to the vehicle. Officers found the gun in a location that matched where Spann stated he hid the gun.

The jury could infer Spann's participation in the murder of Chew "from all of the surrounding circumstances of the illegal activity, including evidence of presence, companionship, and conduct before and after the offense is committed." *See id.* Spann's conduct in cleaning and concealing the murder weapon immediately after the killing supports this conclusion. *See State v. Crawford*, 974 N.W.2d 510, 518–19 (Iowa 2022). We conclude Spann's conviction for aiding and abetting in the murder of Chew is supported by substantial evidence.

**B.** Spann additionally claims the district court should have granted his post-trial motion in arrest of judgment because the evidence presented by the State was not sufficient to support the verdict. In his appellate brief, Spann recognizes this issue is the same as argued above. We have already determined the verdict is supported by substantial evidence and do not address the issue further.

**IV.     Motion for New Trial**

**A.** Spann contends the district court should have granted his motion for new trial based on the newly discovered evidence of Antoine's telephone call on February 7, where he stated, "Emmanuel didn't do nothin', he just got out of the car." Antoine stated Parker, rather than Davison, carried out the murder of Chew.

Iowa Rule of Criminal Procedure 2.24(2)(b)(8) provides that a new trial may be granted "[w]hen the defendant has discovered important and material evidence in the defendant's favor since the verdict, which the defendant could not with

reasonable diligence have discovered and produced at the trial." A motion for new trial based on newly discovered evidence may be granted if the evidence "(1) was discovered *after* the verdict, (2) could not have been discovered earlier in the exercise of due diligence, (3) is material to the issues in the case and not merely cumulative, and (4) probably would have changed the result of the trial." *State v. Linderman*, 958 N.W.2d 211, 223 (Iowa Ct. App. 2021) (citation omitted). These factors must be shown by a preponderance of the evidence. *Moon v. State*, 911 N.W.2d 137, 151 (Iowa 2018).

"Motions for new trials based upon newly discovered evidence are not favored in the law and should be closely scrutinized and granted sparingly." *State v. Compiano*, 154 N.W.2d 845, 849 (Iowa 1967). "The trial court is generally in a better position than we to determine whether evidence, newly discovered, would probably lead to a different verdict upon retrial, and we have often said we will not interfere with its ruling unless it is reasonably clear that such discretion was abused." *Id.* The district court's ruling on a motion for new trial based on newly discovered evidence is reviewed for an abuse of discretion. *State v. Cahill*, 972 N.W.2d 19, 27 (Iowa 2022).

The district court determined Spann failed to establish the fourth factor—that the newly discovered evidence probably would have changed the result of the trial. *See Linderman*, 958 N.W.2d at 223. The court noted Antoine's statement in the telephone call showed Spann was present at the time of the murder and had gotten out of the car, which is consistent with his testimony at Spann's criminal trial. The court found Antoine's statements "declaring that he lied and denying that

CJ Davison was involved in the murder would be, at best, of mixed help to the defense." The court also stated:

> Given the context of [Antoine's] February 7 statements, some of which are internally inconsistent, it is difficult for this [c]ourt to conclude that the unsworn statements are truthful. After carefully evaluating the contents of the audio recording, and the arguments for a new trial based upon . . . Iowa R. Crim. P. 2.24(2)(b) for newly discovered evidence, the [c]ourt concludes that even after hearing and considering the recorded statements of [Antoine], a reasonable jury could conclude the State proved beyond a reasonable doubt that . . . Spann aided and abetted the first degree murder of Demarcus Chew and conspired with others to commit his murder.

The court carefully considered whether the newly discovered evidence probably would have changed the result of the trial and gave its reasons for determining the result of the trial would not have been different even if the evidence had been presented to the jury. The district court has "unusually broad discretion" on this issue. *State v. Jefferson*, 545 N.W.2d 248, 249 (Iowa 1996). The court's discretion was not "exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *See id.* at 251 (citation omitted). We conclude Spann has not shown the district court abused its discretion in denying his motion for new trial based on newly discovered evidence.

**B.** Spann contends the district court should have granted his motion for new trial because the State violated *Brady*, 373 U.S. at 87, when it did not timely give him a recording of Antoine's telephone call that was made on February 7, 2020. In order to show a *Brady* violation, a defendant is required to show by a preponderance of the evidence "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the

issue of guilt." *DeSimone v. State*, 803 N.W.2d 97, 103 (Iowa 2011) (citation omitted).

The district court focused on the third factor. For this factor, a defendant must show that there exists "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Barrett*, 952 N.W.2d 308, 312 (Iowa 2020) (citation omitted). "A 'reasonable probability' is 'a probability sufficient to undermine confidence in the outcome.'" *Id.* (citation omitted). A district court's ruling on claims of a *Brady* violation is reviewed de novo because the claims are of a constitutional nature. *Aguilera v. State*, 807 N.W.2d 249, 252 (Iowa 2011).

The court noted the legal significance of Antoine's statements in the telephone call "should be measured both in the general context in which the statements were made, i.e. concern with being labelled a snitch, but also within the context of other statements [Antoine] made during the phone call." Again, Antoine stated in the call that Spann was present at the time of the shooting and "just got out of the car." The court found that even if the jury heard the recording of Antoine's telephone call, the jury could conclude Spann was guilty of aiding and abetting in the first-degree murder of Chew. The court concluded Spann failed to show that Antoine's statement "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *See Barrett*, 952 N.W.2d at 313 (citation omitted).

On our de novo review, we affirm the court's ruling denying Spann's motion for a new trial. The State's failure to timely give defense counsel a recording of Antoine's telephone call was not a violation under *Brady* because the evidence

was not material, meaning the evidence did not undermine confidence in the verdict. Antoine's statements in the telephone call were internally contradictory and also contradicted parts of his trial testimony. The jury could find Antoine's trial testimony more credible. Spann has not shown "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *See id.* (citation omitted).

C. Spann asserts the district court should have granted his motion for a new trial on the ground that he did not receive a fair and impartial trial. *See* Iowa R. Crim. P. 2.24(2)(b)(9) (providing a defendant may be granted a new trial "[w]hen from any other cause the defendant has not received a fair and impartial trial."). A motion for new trial on this ground may be raised based on "the State's late disclosure of potentially exculpatory evidence." *See State v. Spiker*, No. 19-1957, 2021 WL 377120, at *4 (Iowa Ct. App. Feb. 3, 2021). We review the district court's decision on this issue for an abuse of discretion. *See State v. James*, No. 15-2181, 2016 WL 7395751, at *7 (Iowa Ct. App. Dec. 21, 2016). "Trial courts, which are closer to the actual trial than the appellate courts are, have discretion in granting or denying new trials based on fair trial considerations." *State v. LaDouceur*, 366 N.W.2d 174, 178 (Iowa 1985).

On this issue, the court stated:

Here, this [c]ourt has determined that the audio recorded statements of [Antoine] are not properly characterized as "material to the issue of guilt."

This [c]ourt concludes that the [d]efendant received a fair and impartial trial. While it is most unfortunate the State of Iowa did not immediately disclose the audio recording of [Antoine's] February 7, 2020, statements, this [c]ourt cannot fairly conclude, for the reasons explained herein, that the nondisclosure means that the [d]efendant was denied a fair and impartial trial.

We find no abuse of discretion in the district court's ruling. The court did not exercise its discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *See Jefferson*, 545 N.W.2d at 251 (citation omitted). As determined above, even if the statements had been admitted during Spann's criminal trial, Spann has not shown the result of the proceeding reasonably would have been different.

**D.** Finally, Spann claims the district court should have granted his motion for a new trial on the ground the verdict was contrary to the weight of the evidence. *See State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). The court has "wide discretion" in ruling on motions for new trial on this ground. *Id.*

> [W]e caution trial courts to exercise this discretion carefully and sparingly when deciding motions for new trial based on the ground that the verdict of conviction is contrary to the weight of the evidence. We have confidence in our trial courts that they will heed this admonition; a failure to follow it would lessen the role of the jury as the principal trier of the facts and would enable the trial court to disregard at will the jury's verdict.

*Id.*

The district court "conclude[d] that the weight of the evidence presented by the State was more than adequate to support each jury verdict." After summarizing the evidence, the court determined "this is not an exceptional case where the 'evidence preponderates heavily against the verdict.'" *See id.*

The evidence shows that shortly before the shooting, Spann and four other men were at a nightclub in Illinois, where the murder victim, Chew, was also present. When Chew left the nightclub, the men followed Chew in two vehicles. When they came to Burlington, one car continued to follow Chew while the other

car, which contained Spann, drove to a location near Chew's home. Spann and Davison left the vehicle immediately before Chew was shot. They returned to the vehicle together. Davison gave a gun to Spann, who wiped it off and hid it. Spann later told Antoine that he witnessed the shooting of Chew. We conclude the district court did not abuse its discretion by denying Spann's motion for new trial based on his claim the verdict was contrary to the weight of the evidence.

We affirm Spann's conviction for first-degree murder on a theory of aiding and abetting.

**AFFIRMED.**